**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Herbert BARTLE, Defendant–Appellant.**

No. 87–5093.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 24, 1987.

Decided Dec. 17, 1987.

Daniel T. Taylor, III, Louisville, Ky. (Court-appointed), for defendant-appellant.

Joseph Whittle, U.S. Atty., David Grise, Randy Ream, Terry M. Cushing, argued, Louisville, Ky., for plaintiff-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Herbert Bartle appeals from a judgment of the United States District Court for the Western District of Kentucky convicting him of making a false statement in an application for status as a permanent resident to the United States Immigration and Naturalization Service (INS), in violation of 18 U.S.C. § 1546.[1] In this appeal, Bartle argues that the government failed to present proof to sustain the charge of the indictment. He also claims that the district court erred in allowing the government to introduce damaging evidence that had not been made available to defense counsel in contravention of a reciprocal discovery order. Finally, Bartle contends that, although the district court was correct during the trial in severing his trial from that of his alleged accomplice Brad Smith because of a perceived problem under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the district court committed reversible error in proceeding with *his* trial when the testimony elicited prior to severance concerned statements allegedly made by Smith—not Bartle. For the following reasons, we affirm the judgment of the district court.

**I.**

On July 7, 1986, the grand jury returned an indictment against Bartle and Smith. Paragraph two of the single-count indictment charged Bartle with falsely representing under oath to the INS "that defendant and Jogina Eheart were living together as man and wife." Smith was charged with aiding and abetting the commission of this offense.

The incident that became the subject of this criminal prosecution occurred on October 23, 1985. On that day, Bartle, a West German immigrant, applied for status as a permanent resident alien at the INS office in Louisville, Kentucky. His ground for so doing was that he was married to one Jogina Eheart, a United States citizen.

On line 14 of the permanent resident application (Form I–485), Bartle checked the box indicating that he was married, and listed his wife's name as "Eheart, Jogina Ann." On line 15, Bartle checked the box indicating that his wife resided with him. At the bottom of the form, Bartle made oath that the contents of the application were true to the best of his knowledge.

A joint trial of Bartle and Smith was commenced before a jury, and it was not disputed at trial that Bartle and Eheart were validly married in June of 1985.

Eheart was the government's chief witness at trial. She testified that sometime in January or February of 1985 she was approached by Smith who discussed with her the possibility of marrying Bartle so that he could acquire permanent resident status. Eheart further testified that Smith promised her five-hundred dollars if she married Bartle and that she did not know Bartle at the time.

Bartle objected to this testimony on the ground that, while probative of Smith's complicity and admissible against him as an admission by a party-opponent, such testimony would violate Bartle's sixth amend-

---

1. 18 U.S.C. § 1546 provides, *inter alia:*
   Whoever knowingly makes under oath ... any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder ... shall be fined not more than $2000 or imprisoned not more than five years, or both.

ment right to confrontation under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), if Smith did not testify thereby avoiding cross-examination, and that Smith had not indicated that he was going to testify. Later in the trial, the district court granted Bartle's motion for a severance of his trial from Smith's in order to avoid continuing *Bruton* problems. But instead of proceeding with Smith's trial and postponing Bartle's, the court unaccountably did the opposite. Bartle objected to the court's decision to proceed with his trial. Smith did not testify at Bartle's trial.

Eheart continued her testimony. She testified repeatedly that she was not living with Bartle on October 23, 1985—the day Bartle filed his permanent resident application with the INS. Rather, she maintained that she was living at the Army barracks in Fort Campbell, Kentucky, where she served as an enlisted soldier. Eheart's testimony was impeached on cross-examination by the disclosure that she had lied to the INS on numerous occasions and had made an agreement with the government for her testimony against Bartle.

The only other evidence presented at trial tending to corroborate Eheart's testimony that she was not living with Bartle on October 23, 1985, was a "key-control log" in the possession of Sergeant Jackie Jameson. Sergeant Jameson testified that the key-control log is kept by the Army at Fort Campbell and records the day on which a key to the barracks is checked out to an enlisted soldier and the day on which it is returned. The log showed that a key was checked out to Eheart on October 8, 1985, and returned on November 27, 1985, and was therefore checked out at the time Bartle had represented that she was living with him.

Bartle objected to the introduction of the key-control log on the ground that it was not made available to him during discovery in violation of a reciprocal discovery order. The government explained that the log was not discovered until the day before trial. The district court overruled Bartle's objec-

tion and admitted the key-control log as evidence.

On October 2, 1986, the jury returned a verdict of guilty against Bartle finding that he violated 18 U.S.C. § 1545 by falsely swearing that he resided with Eheart on October 23, 1985. Bartle was subsequently sentenced to five years of probation.

## II.

### A.

Bartle first argues that he is entitled to a reversal because of a variance between the proof introduced at trial and the facts alleged in the indictment. Paragraph two of the indictment states:

As part of the [permanent resident] application process, on or about October 23, 1985, HERBERT BARTLE was placed under oath by a Hearing Examiner duly authorized to administer oaths, and thereunder and contrary to that oath knowingly affirmed, restated the substance of, and subscribed as true an Application for Status as a Permanent Resident which, as defendant well knew, contained false statements of material facts; to wit, that defendant and Jogina Eheart were living together as man and wife.

Bartle argues that since his application for permanent resident status, introduced into evidence, which affirms that "[m]y ... wife resides with me," does not contain the indictment language, "living together as man and wife," there is a variance between the government's proof at trial and the facts alleged in the indictment. We disagree in that we determine that there was no material variance. This court has noted that "[a] variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment." *United States v. Beeler,* 587 F.2d 340, 342 (6th Cir.1978), *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981).

Bartle argues that the language of the indictment, "living together as man and wife," should be narrowly construed as a direct quote of the false statement allegedly contained in his application for permanent residency, and, since that *precise* lan-

guage does not appear on the application, there is a variance between the government's proof and the facts alleged in the indictment. Since the grand jury did not intend its words to be a quote but merely a summary of the fraudulent representation (as evidenced by the absence of quotation marks around the statement), Bartle's argument rests implicitly on the assumption that indictments alleging false representations must quote the offending statements.

This assumption is incorrect. In *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the Supreme Court held that a key requirement for an indictment to pass fifth amendment muster is that it " 'sufficiently apprise the defendant of what he must be prepared to meet.' " *Id.* at 763–64, 82 S.Ct. at 1047 (citations omitted). Additionally, the Court noted that the indictment must be specific enough to enable the defendant to effectively raise the double jeopardy bar in any subsequent criminal proceeding. *Id.* at 764, 82 S.Ct. at 1047.

■ These constitutional requirements do not mandate that, in every false statement prosecution, the indictment quote verbatim the purported misrepresentation. *See, e.g., United States v. Radetsky*, 535 F.2d 556 (10th Cir.1976). It is sufficient, to apprise the defendant of the charge and to protect against double jeopardy, if the indictment describes the alleged false statement in such a way as to distinguish it from the universe of other statements made by the defendant.

In the instant case, the indictment describes with particuliarity the document in which the false statement is to be found, and adequately summarizes the statement's contents. There is, therefore, no requirement that we take the excessively literalist tack urged by Bartle of treating the summary language of the indictment as a direct quote, and superimposing the indictment's language over Bartle's actual statement to insure a perfect match.[2]

---

**2.** Even if we were to treat the language of the indictment as a quote, a word-for-word equivalence is not required. As the Supreme Court stated in *Smith v. United States*, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959), "Convictions

### B.

Bartle next argues that the district court abused its discretion in permitting the government to introduce the Fort Campbell key-control log into evidence when the log had not been furnished to him in contravention of a reciprocal discovery order. Specifically, he contends that the district court's decision violated Rule 16 of the Federal Rules of Criminal Procedure. We reject this argument on two separate grounds.

■ The first ground for rejecting Bartle's argument is that Rule 16 does not *require* federal courts to exclude evidence not turned over to the discovering party in violation of a discovery order. Rather, the rule provides, *inter alia:*

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court *may* order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, *or it may enter such other order as it deems just under the circumstances.*

Fed.R.Crim.P. 16(d)(2) (emphasis added).

In *United States v. Joyner*, 494 F.2d 501 (5th Cir.), *cert. denied*, 419 U.S. 995, 95 S.Ct. 308, 42 L.Ed.2d 268 (1974), the Fifth Circuit addressed the issue of whether suppression was mandated under Rule 16 when the disputed evidence was unearthed by the government while the trial was in progress. In *Joyner*, the defendant was surprised by the admission of the lower-half of a social security card, the existence of which had not been previously disclosed to him in violation of a reciprocal discovery order. The government's counsel explained that he did not learn of the card's existence until the previous day when he was preparing the witness for trial. The

---

are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. This has been a salutary development in the criminal law." *Id.* at 9, 79 S.Ct. at 996–97.

court of appeals held that the admission of the card was proper under Rule 16(d)(2) since the last minute discovery of the document rendered admission "just under the circumstances." *Id.* at 507.

The *Joyner* decision informs the instant case. The record clearly shows that Sergeant Jameson did not discover the key-control log until the day before the government sought to admit it as evidence. There is absolutely no evidence that the government engaged in any deceitful conduct in keeping the key-control log from Bartle. Consequently, we cannot say that the district court's decision to deny Bartle's request for suppression of this highly probative, properly authenticated item of evidence was an abuse of discretion.

██ The second ground for rejecting Bartle's argument on this issue is that, at trial, Bartle offered the district court no other option in dealing with the surprise key-control log but the most severe one—suppression. Rule 16(d)(2), however, provides for a variety of remedies that optimally allow the admission of the probative evidence while insuring that the opposing party has adequate time to prepare for it. Among these remedies are the recess and the continuance.

In *United States v. Kubiak*, 704 F.2d 1545 (11th Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983), the Eleventh Circuit was presented with a case where the government apparently willfully withheld from the defendant a laboratory report in violation of a reciprocal discovery order. When the government sought to introduce the report at trial, defendant moved that it be suppressed. The district court admitted the evidence, and the defendant appealed. In affirming the district court, the Eleventh Circuit emphasized that the defendant did not move for a recess or continuance to give him time to examine the report. The court stated:

> The appellant simply asserts that the government's untimely disclosure of the lab report denied him his right to effectively challenge the report or pursue further discovery concerning the government witness. We note, however, that the only step taken by the defense to relieve itself from the predicament it now complains of, was its request that the chemist's testimony be stricken from the record. The defense never asked for a recess, let alone a continuance, to give it an opportunity to review the report.... To put it simply, the prejudice now complained of by the appellant "could perfectly well have been ratified [sic] by a recess. Absent such a request the court cannot be faulted for having denied the request to preclude the [g]overnment from alluding to the [report] in question."

*Id.* at 1552 (citations omitted).

*Kubiak* is persuasive authority in the present controversy. In the instant case, Bartle, faced with the prospect of the government's introduction of highly probative evidence for which he had not been given a chance to prepare, did not seek a recess or continuance to investigate the accuracy and authenticity of the key-control log, but rather sought its complete exclusion. Excluding a critical piece of documentary evidence when a recess or continuance would have adequately protected the defendant's legitimate interests is particularly inappropriate where, as here, the government neither willfully nor negligently violated the discovery order. Bartle, by not moving the district court for a recess or continuance, is not in a position to fault the court for denying his motion to exclude the key-control log.

### C.

Bartle lastly complains that the district court committed reversible error when, after severing his trial from codefendant Smith's because of a perceived *Bruton* problem, the court decided to proceed with his trial and postpone Smith's.

The government's key witness, Eheart, began her testimony by recounting the details of numerous meetings she had with Smith in which Smith attempted to procure her services as a "bride" to Herbert Bartle. According to Eheart, Smith explained to her during one of these meetings that Bartle needed to marry an American woman to

remain in the United States as a permanent resident. Additionally, Smith represented to her that Bartle was willing to pay her five-hundred dollars for her participation in the marriage.

Bartle objected to this testimony on the ground that, while it was admissible against Smith, the testimony was inadmissible hearsay when applied to him. And, since Smith might not testify, the admission of Eheart's hearsay testimony would violate Bartle's sixth amendment right of confrontation as announced in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The district court later in the trial accepted Bartle's argument that there was a *Bruton* problem and granted his motion for a severance of his trial from Smith's. However, the district court then unaccountably proceeded with Bartle's trial while staying Smith's. Bartle objected to this decision on the ground that, since Eheart had already proffered her objectionable testimony, continuing his trial before the same jury would defeat the very purpose the severance was intended to achieve. Bartle renews this objection on appeal.

We note initially that, had the district court been correct in its original determination that *Bruton* required severance in this case, its subsequent decision to proceed with Bartle's trial would clearly have been erroneous. If, however, as we conclude, severance was not mandated by *Bruton*, Bartle simply cannot complain that the district court's decision to proceed with his trial was error.

In *Bruton*, the Supreme Court held, *inter alia*, that in a joint trial of codefendants A and B, admitting testimony from a third party that A made certain statements incriminating both himself and B would violate B's sixth amendment right of confrontation unless A testified, thereby becoming subject to B's cross-examination. *Id.* at 126, 88 S.Ct. at 1622–23. If, in such a case, the government wished to get the third party's testimony into evidence for the legitimate purpose of inculpating A, the court should consider deleting the references in A's alleged statements to B or severing the joint trial. *Id.* at 133–34, 88 S.Ct. at 1626–27. *See also United States v. Truslow*, 530 F.2d 257, 262 (4th Cir.1975).

Ten years later, in *Tennessee v. Street*, 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985), the Supreme Court clarified its holding in *Bruton* by noting that, when the government seeks to admit the third party's testimony concerning codefendant A's incriminating statements against B for some *nonhearsay* purpose, B's right of confrontation is not implicated. *Id.* at 414, 105 S.Ct. at 2081–82. And, most recently, in *Bourjaily v. United States*, 483 U.S. ——, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the Court held, *inter alia*, that the right of confrontation is also not violated when the government seeks to introduce the incriminating statement against B for some purpose which " 'falls within a firmly rooted hearsay exception.' " *Id.* at ——, 107 S.Ct. at 2783, 97 L.Ed.2d at 157 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)). In neither of these cases is severance required.

■ In the instant case, Eheart's testimony concerning her conversations with Smith was not admitted as hearsay against Bartle. The government was not attempting to prove the truth of the matters asserted by Smith in those statements—*i.e.*, that Bartle wanted to marry an American to stay in the United States, or that Bartle was willing to pay Eheart five-hundred dollars to marry him. It was undisputed that the marriage was a valid one. The content of Smith's statements to Eheart is relevant and admissible to show, however, that Bartle falsely represented to the INS that he was living with Eheart on October 23, 1985. More specifically, Smith's statements to Eheart were admissible *nonhearsay* in that they tended to show Eheart's *state of mind* going into the marriage. Her state of mind at the time of her marriage to Bartle bears directly on the disputed factual issue of whether she and Bartle were living together at the time he applied for permanent resident status with the INS in that a woman who participates in a marriage with this state of mind will certainly

be less likely to live with her "husband" after the wedding.

■ Since Eheart's testimony concerning Smith's statements to her was admissible nonhearsay against Bartle, Bartle's sixth amendment right of confrontation was not implicated, and therefore it was not error to proceed with the trial against him. Consequently, the fact that the district court decided to proceed with Bartle's trial, after granting his motion for severance, created no legal error.[3]

For the forgoing reasons, the judgment of the district court is AFFIRMED.

---

**3.** The government urges that, even if Eheart's testimony recounting Smith's statements to her was hearsay as applied to Bartle, the statements would still have been admissible against him under the statement-of-a-coconspirator exception to the hearsay rule. Fed.R.Evid. 801(d)(2)(E). That this exception is "firmly rooted" enough in our jurisprudence to assuage any *Bruton* concerns was made crystal clear by the Supreme Court's decision in *Bourjaily*, 483 U.S. at ——, 107 S.Ct. at 2782–83, 97 L.Ed.2d at 157. Furthermore, *Bourjaily* informs us that the rather weak *nonhearsay* evidence of a conspiracy between Bartle and Smith is not fatal to a finding of a conspiracy since "a court, in making a preliminary factual determination un-

der Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted." *Id.* at ——, 107 S.Ct. at 2782, 97 L.Ed.2d at 156.

The difficulty we have in accepting the government's argument stems from the fact that they did not raise it before the district court when opposing severance. Consequently, the district court was never asked to make the requisite factual determination that the government had proven a conspiracy by the preponderance of the evidence. *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *United States v. Enright*, 579 F.2d 980, 986 (6th Cir.1978).