27 F.3d 568
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Douglas Rowland STARNES, Defendant-Appellant.
 No. 93-5931.
 United States Court of Appeals, Sixth Circuit.
 May 26, 1994.
 
 Before: NELSON and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendant was found guilty by a jury of participating in a conspiracy to distribute marijuana and to possess the drug with intent to distribute it, all in violation of 21 U.S.C. Sec. 846. He appeals his conviction and sentence, contending (1) that a violation of his due process rights occurred when a forensic toxicologist was allowed to identify the substance in question as marijuana notwithstanding that the government had failed to provide the defendant a copy of the laboratory test results in advance; (2) that the district court erred in allowing a co-conspirator to testify that a purchase of 35 to 40 pounds of marijuana would be associated with distribution rather than personal use; and (3) that the district court erred in determining the quantity of marijuana involved in the conduct deemed relevant for sentencing purposes. Finding none of these contentions persuasive, we shall affirm both the conviction and the sentence.
 
 
 2
 * The defendant, Douglas Starnes, was indicted on the marijuana charges in November of 1992. Also charged in the indictment were Alvin Godair, Patrick Fox, and David Bullington. Messrs. Godair and Fox entered into pretrial plea agreements with the government, while Bullington and Starnes chose to stand trial. Mr. Starnes was convicted, and Mr. Bullington was acquitted. On June 18, 1993, Starnes was sentenced to a prison term of 78 months; this appeal followed.
 
 
 3
 The evidence indicated that in October of 1992 Messrs. Fox and Bullington travelled from Memphis to Brownsville, Texas, where they purchased some seventy pounds of marijuana and arranged to have it shipped to Memphis in computer boxes. A manager at the freight company became suspicious and summoned police officers. A police drug dog reacted positively to the boxes, whereupon the officers obtained search warrants and opened the containers. Finding marijuana inside, they resealed the boxes, sent them on to Memphis, and notified law enforcement officials in that city. When the boxes arrived in Memphis, local police officers and agents of the Drug Enforcement Agency arrested Messrs. Bullington and Fox as they attempted to take delivery of the containers.
 
 
 4
 Mr. Fox agreed to cooperate with the officials, and they arranged a controlled delivery of the boxes to Mr. Godair. He was arrested too, and likewise agreed to cooperate with the officers. Godair then called Mr. Starnes and arranged to deliver the boxes to him at a shopping center parking lot. It was there that Mr. Starnes was arrested, after four of the boxes had been loaded into the trunk of his car.
 
 
 5
 Godair, Fox, and Fox's girlfriend all testified at trial that Mr. Starnes had paid between $20,000 and $30,000 to purchase some thirty-five to forty pounds of the marijuana contained in the boxes. Starnes, on the other hand, testified that he believed that the boxes contained "children's computers"; he said that he had agreed to pay less than one hundred dollars for them.
 
 
 6
 Forensic toxicologist Harold Nichols took the stand as a government witness. Mr. Nichols had analyzed the substance found in the boxes and concluded that it was marijuana. Mr. Starnes objected to this witness being allowed to testify, Starnes not having received a copy of the toxicology report in advance of the testimony. (Starnes had previously requested any such report under Rule 16, Fed.R.Crim.P., but the government had failed to produce a copy.) The prosecutor told the court that the report had been prepared only the day before and that the government had not been withholding it from the defendant intentionally. Observing that the government "probably should have gone ahead and given it to [Starnes] yesterday," the court found that the defendant would not be prejudiced if the report were submitted to him for inspection prior to Mr. Nichols' testimony. Mr. Starnes did not request a recess or a continuance, and he did not cross-examine Mr. Nichols.
 
 
 7
 Wayne Godair also testified as a government witness. He told the jury that defendant Starnes had made approximately five trips from Tennessee to Texas to purchase marijuana. Godair said that he accompanied Starnes on some of these trips and that Fox accompanied him on others, but that he (Godair) profited financially from each of the trips. He acknowledged that he had been convicted in 1984 and 1989 on charges of possession of marijuana with intent to distribute it. After this testimony was given, the government asked Godair the following question:
 
 
 8
 "Now, as somebody who has been in the marijuana business yourself, is [thirty-five to forty pounds of marijuana] a quantity you would associate with personal use or a quantity you would associate with distribution?"
 
 
 9
 The defendant objected, arguing that the government be required to "qualif[y the witness] a little bit further." In response, the government argued that Mr. Godair was testifying based on his extensive personal experience in the marijuana business. The court overruled the objection, and Mr. Godair stated that such an amount would normally be associated with distribution.
 
 
 10
 Mr. Godair was then asked this question: "Say you were going to buy some marijuana for your personal use, how much would you buy at one time?" Again the defendant objected, and again the objection was overruled. Godair testified that if he were buying marijuana for personal use, he would buy one-quarter of an ounce.
 
 II
 
 11
 * We turn now to the belated toxicology report. It is well established that the Due Process Clause of the Fifth Amendment does not guarantee a criminal defendant any right to discovery of evidence the government intends to use at trial. Weatherford v. Bursey, 429 U.S. 545, 559 (1977). The delay in producing the report thus did not amount to a constitutional violation.
 
 
 12
 Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure provides that, "[u]pon request of a defendant the government shall permit the defendant to inspect and copy ... any results or reports of ... scientific tests ... which are within the possession, custody, or control of the government...." Subsection (d) of the rule vests the trial court with discretion to enforce discovery requests through orders "prescrib[ing] such terms and conditions [of discovery] as are just." See United States v. Glover, 846 F.2d 339, 342 (6th Cir.), cert. denied, 488 U.S. 982 (1988). Absent a showing of willful impropriety in the withholding of evidence, a trial court is not required to exclude evidence that should have been turned over to an adverse party during discovery; such exclusion is, however, an option the court may exercise in enforcing Rule 16. United States v. Bartle, 835 F.2d 646, 649 (6th Cir.1987), cert. denied, 485 U.S. 969 (1988).
 
 
 13
 No willful impropriety has been shown in the case at bar, and we do not believe that the trial court abused its discretion in allowing the toxicologist to testify. Although Mr. Starnes had not seen the toxicology report until just before the testimony was given, he did not ask for a recess to examine the report with care. Neither did he request a continuance so that he could submit the report to independent experts for evaluation. In these respects this case resembles United States v. Kubiak, 704 F.2d 1545 (11th Cir.), cert. denied, 464 U.S. 852 (1983), which our court cited with approval in Bartle, 835 F.2d at 650. In the Kubiak case, the Eleventh Circuit stated:
 
 
 14
 "The appellant simply asserts that the government's untimely disclosure of the lab report denied him his right to effectively challenge the report or pursue further discovery concerning the evidence or the government witness. We note, however, that the only step taken by the defense to relieve itself from the predicament it now complains of, was its request that the chemist's testimony be stricken from the record. The defense never asked for a recess, let alone a continuance, to give it an opportunity to review the report.... To put it simply, the prejudice now complained of by the appellant 'could perfectly well have been [rectified] by a recess. Absent such a request the court cannot be faulted for having denied the request to preclude the [g]overnment from alluding to the [report] in question.' " 704 F.2d at 1552 (citations omitted).
 
 
 15
 Mr. Starnes did not contend at trial that he was unfairly surprised by Mr. Nichols' proffered testimony, nor did he complain that his lack of access to the report had left him inadequately prepared to proceed. He merely requested that the report and Mr. Nichols' testimony be excluded. The trial court did not abuse its discretion in denying the request.
 
 B
 
 16
 The defendant also challenges his conviction on the ground that the trial court improperly allowed Mr. Godair to express an opinion on the ultimate issue of Mr. Starnes' guilt, a question within the exclusive province of the jury. We see no impropriety in Mr. Godair's testimony. Mr. Godair was shown to have been personally involved in the business of dealing in marijuana, and based on his personal experience he testified that a purchase of thirty-five to forty pounds of marijuana would be associated with distribution rather than personal use. Such testimony did not amount to an impermissible legal conclusion. The normal order of magnitude of purchases of marijuana for personal use is a question of fact, just as the orders of magnitude that could be expected in purchases for redistribution constitutes a question of fact. The witness was subject to cross-examination on the extent of his knowledge on these matters, and Mr. Starnes was free to try to impeach his credibility by showing that it would be in Godair's interest to curry favor with the government. Godair's testimony was relevant and probative, and the court did not err in admitting it.
 
 III
 
 17
 Mr. Starnes attacks his sentence on the ground that the district court held him responsible for a larger amount of marijuana than it should have done. Based on the trial testimony of Messrs. Godair and Fox, the court held Mr. Starnes responsible for two shipments that preceded the one for which he was convicted: a shipment of thirty pounds of marijuana from Texas to Tennessee early in the summer of 1992, and another shipment of thirty pounds about a month later. The court found that the defendant was involved in the planning and execution of both shipments, and that these shipments, like the October shipment for which Starnes was convicted, were part of the same distribution scheme. The court also held Starnes accountable for the entire seventy pounds of marijuana shipped in October of 1992, notwithstanding Starnes' claim that he planned to purchase only half of that shipment. These findings led to Starnes being assigned a base offense level of 20 under the United States Sentencing Guidelines.
 
 
 18
 U.S.S.G. Sec. 1B1.3(a)(2) provides that, in setting the base offense level for a defendant convicted of a narcotics distribution crime, the court should consider "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." Trial testimony by Mr. Starnes' co-conspirators provided the court with an ample factual basis for concluding that the course of conduct that culminated in Starnes' arrest reached back at least to the summer of 1992 and encompassed the two prior shipments. The testimony was not too vague to support the court's finding.
 
 
 19
 It is not necessary for us to resolve the question of whether Starnes should have been held responsible for the full 70 pounds of marijuana in the October shipment, or only half that amount, because his base offense level would have been the same in either case. If held responsible for only thirty-five pounds (15.876 kg) in October, he would still have had a base offense level of 20 when the 27.216 kg from the earlier shipments was added in. (Anything between 40 kg and 60 kg yields a base offense level of 20, and Mr. Starnes would have been responsible for more than 43 kg even if only half the October shipment had been counted.)
 
 
 20
 The defendant's conviction and sentence are AFFIRMED.