<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 16a0404n.06

Case Nos. 15-5027/5059/5072/5153/5233/5244/5259

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Jul 18, 2016 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| STACEY R. WOLFORD (15-5027 & 15- | ) | KENTUCKY |
| 5153); STEPHEN M. NEAL, II (15-5059 & | ) | |
| 15-5259); ROBERT L. EVANS (15-5072 & | ) | |
| 15-5233); BRENT D. EVANS (15-5244), | ) | |
| | ) | |
| Defendants-Appellants. | | |

BEFORE: SILER, ROGERS, and SUTTON, Circuit Judges.

**SILER**, Circuit Judge. Defendants Stacey R. Wolford, Brent D. Evans, Robert L. Evans, and Stephen M. Neal appeal a number of the district court's rulings that preceded their ultimate convictions and sentences for involvement in an illegal drug ring. For the following reasons, we **AFFIRM**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case concerns friends and neighbors in Kentucky, namely, three couples—Brent Evans ("Brent") and Wolford, Neal and Aleshia Mills, and Anthony Childers and Crystal Dalton—as well as Brent's brother, Robert Evans ("Robert"). Brent supplied money for others to travel to pain clinics in Maryland and Texas to fill oxycodone prescriptions. As to their

participation in the conspiracy, Wolford traveled to the Texas clinic on multiple occasions, owned the minivan used for most of the trips, and sold oxycodone numerous times; Childers and Dalton traveled to the clinics in both Maryland and Texas and Childers sold some oxycodone— as did Neal and Mills; and Robert participated in later trips to Texas and sold oxycodone pills.

Mills, Dalton, and Childers pleaded guilty and were sentenced for their roles in these crimes. Wolford, Brent, Robert, and Neal all went to trial; Wolford was sentenced to 51 months' imprisonment; Brent to 360 months; Robert to 108 months; and Neal to 180 months. Each of the four defendants who went to trial now appeals on various grounds.

## DISCUSSION

### I.      Brent's Request for a Third Continuance

Brent first contends that the district court erred in denying his third motion for a continuance that he submitted a few weeks before the trial date. This court "review[s] denial of a motion for a continuance for abuse of discretion." *United States v. Garner*, 507 F.3d 399, 408 (6th Cir. 2007).

This case was initially set for trial on January 22, 2014, and Brent's attorney filed his first motion to continue the trial on December 6, 2013. The district court granted the request and rescheduled the trial to March 10, 2014. After Brent replaced his attorney, his new counsel filed a motion to continue the trial, and the court rescheduled the trial to May 27, 2014. After the superseding indictment was returned on May 8, 2014, the district court continued the trial sua sponte until October 20, 2014.

On October 9, 2014, Brent's third attorney filed a motion asking for either a continuance of the trial date so he could have more "time to review the discovery," or, in the alternative, permission to file pretrial motions up to the time of the scheduled trial. The district court denied

the motion to continue the trial, noting that the parties had subpoenaed witnesses for the current trial date, the matter had been set for a number of months, and the motions deadline had long since passed.

This court considers a number of factors in determining if a district court abused its discretion in denying a continuance. *See Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003). "[T]he defendant must also show that the denial of the continuance actually prejudiced his or her defense. Actual prejudice is established by showing that a continuance would have . . . added something to the defense." *United States v. Lewis*, 605 F.3d 395, 401 (6th Cir. 2010) (citations and internal quotation marks omitted).

The district court did not abuse its discretion in denying Brent's third request for a continuance. It had already continued the trial three times, two of which were at Brent's request; multiple out-of-town witnesses had to make travel arrangements to attend the scheduled trial, including a records custodian and a chemist; Brent himself caused the circumstances giving rise to his request for a third continuance by waiting until eleven days prior to trial before retaining new counsel; and the case involved a fairly simple drug conspiracy. Moreover, Brent's new attorney reviewed the discovery before trial.[1] And finally, Brent's claim that he was prejudiced by the denial because he failed to comply with Rule 16 months earlier does not avail him, given

---

[1] Brent's claim that a continuance was needed because the discovery was voluminous was not raised below, does not satisfy the strictures of plain error review, and thus it need not be considered further on appeal. *See United States v. Kennedy*, 714 F.3d 951, 959 (6th Cir. 2013) ("[Defendant's] argument is therefore forfeited on these two issues because she raised them for the first time on appeal.").

Regardless, the record indicates that Brent's new counsel had time to review the discovery, and during the final pretrial conference he did not raise any issues caused by his late entry into the case.

that he has not shown how a two-week continuance would excuse his failure to fulfill his Rule 16 obligation.[2]

## II.    Brent's Failure to Comply with Rule 16

Brent next challenges the district court's exclusion of his proposed expert testimony on "spoofing"—which he defines as "the practice of making a text message or telephone call seem to come from a different number than where it came from."

"A district court's exclusion of expert testimony will not be set aside unless we determine that the court abused its discretion." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 980 (6th Cir. 2004). When reviewing such a denial, this court must consider "(1) the reasons for the [party's] delay in producing the materials, including whether it acted intentionally or in bad faith; (2) the degree of prejudice, if any, to the [opposing party]; and (3) whether the prejudice to the [opposing party] can be cured with a less severe course of action." *United States v. Davis*, 514 F.3d 596, 611 (6th Cir. 2008) (quoting *United States v. Maples*, 60 F.3d 244, 247 (6th Cir. 1995)). However, "[w]e review [a] district court's evidentiary rulings[] involving an alleged violation of Sixth Amendment rights[] under a *de novo* standard of review." *United States v. Hamilton*, 128 F.3d 996, 999 (6th Cir. 1997).

"The defendant must, at the government's request, give to the government a written summary of any [expert] testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial" if the defendant has made a similar request to the government. Fed. R. Crim. P. 16(b)(1)(C). "If a party fails to comply with this

---

[2] *United States v. Gallo*, 763 F.2d 1504 (6th Cir. 1985), does not aid Brent. In *Gallo*, the Court determined that a continuance should have been granted when "[t]he trial judge allowed [the defendant] only ten or eleven days to prepare a defense to the RICO claim contained in the superseding indictment." *Id.* at 1523. Unlike *Gallo*, this was not "a highly complex case," nor was Brent denied sufficient time to prepare his defense to a new claim against him. *Id.* at 1524.

rule, the court may: (A) order that party to permit the discovery or inspection . . . ; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2).

Both parties acknowledge that the Government specifically sought reciprocal discovery from Brent. Nevertheless, on the night following the third day of trial, Brent told the Government that he wanted to present expert testimony of "spoofing," based upon information he received the previous morning from his private investigator—although he conceded that he had no evidence that the Government had employed the practice. In response, the district court ruled that because Brent had failed to comply with Rule 16, the witness would be excluded from testifying.[3]

The district court properly precluded Brent from presenting expert testimony because he failed to provide the Government with reciprocal discovery under Rule 16. *See* Fed. R. Evid. 702.

First, Brent never provided the Government with the information required by Rule 16, essentially denying the Government an opportunity to rebut his witness's testimony with its own expert. Moreover, as the district court aptly noted, "there's no proof whatsoever that this practice occurred in this case," and thus it properly excluded testimony that would have been irrelevant. *See United States v. Langan*, 263 F.3d 613, 622–23 (6th Cir. 2001) (affirming the

---

[3] Brent was permitted to offer the avowal testimony of his proposed witness, Michael Ober. Ober indicated that he was familiar with spoofing, and he described the process as going online to websites and purchasing the ability to send specific outgoing calls or texts with the appearance that they came from another telephone number. However, Ober's knowledge of the practice was limited to reading about it online and using it on occasion. He did not have any training or expertise in computers; he could not explain how the process works or verify how spoofed calls would appear in phone records; he had no idea what phone system the informant was using; and he had not researched Brent's phone system to see if spoofing was viable under those circumstances. Accordingly, his testimony did not alter the court's decision.

district court's exclusion of expert testimony that would "not [have] be[en] of assistance" to the jury). And irrelevance aside, Brent's proffered testimony was problematic, given that Ober had no expertise with the process and limits of spoofing, nor did he have any knowledge of the facts of the case or phone systems involved.[4]

And finally, Brent asserts that there is no evidence that his failure to comply with Rule 16 was willful or motivated by a desire to obtain a tactical advantage. However, he admittedly withheld his intention to introduce Ober's testimony for a day—given that he spoke with the private investigator in the morning and did not inform opposing counsel until that night—without any explanation for the delay.[5] In any event, whether Brent had a bad motive is not determinative of the abuse-of-discretion question.

Thus, Brent has failed to establish that the district court abused its discretion in excluding the proposed expert testimony regarding spoofing.

### III. Limitation of Robert's Cross-Examination of Aleshia Mills

Robert asserts that the district court abused its discretion in limiting his cross-examination of Mills regarding her loss of custody of her minor child.

---

[4] Brent contends that the text messages were the only evidence linking him to the controlled-buy transactions. However, considerable evidence connected him to these transactions and indicated that spoofing did not occur—for instance, the fact that records from his phone service provider confirmed the existence of outgoing and incoming calls between his number and the informant's that matched calls recorded by the agents working with the informant; Brent's voice was captured on multiple recorded calls to and from the informant; and the informant and Neal each referred to Brent by name in texts and recordings on multiple occasions as being involved in these transactions.

[5] *United States v. Bartle*, 835 F.2d 646 (6th Cir. 1987), does not avail Brent. In *Bartle*, this court discussed the value of a recess to allow a challenging party to review proffered documentary evidence where there has been a discovery violation. *Id.* at 650. In this case, however, the proffered evidence was not a document merely requiring review, but expert testimony that could only be adequately addressed through substantial research and presentation of contrary expert testimony. Moreover, unlike the evidence here, the evidence in *Bartle* was "highly probative [and] properly authenticated." *Id.*

District courts "retain 'wide latitude' to impose 'reasonable limits on cross-examination,'" *United States v. Holden*, 557 F.3d 698, 704 (6th Cir. 2009) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)), particularly when the questioning "is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

At trial, Mills testified about her cooperation in the investigation and her hopes for a reduced sentence. She acknowledged that as a result of her addiction she had lost custody of her older child approximately three years before, she expressed concern about losing custody of her infant, and she repeated this testimony on cross-examination several times.

On cross-examination, Robert's attorney asked who had custody of Mills's older child. The Government objected, and the district court sustained the objection. The district court cut off further questioning: "[w]e're not going to get into the reasons why she doesn't have custody of the child. We know she testified on direct it's because of her—she had an addiction. We're not going to speculate as to why the child's not in her custody."

"When a district court limits the scope of cross examination, we review that ruling for abuse of discretion." *United States v. Callahan*, 801 F.3d 606, 623 (6th Cir. 2015). "In determining a trial court's limitation of cross-examination for motive, bias, or prejudice, a reviewing court must decide 'whether the jury was otherwise in possession of sufficient information concerning formative events to make a discriminating appraisal of a witness' motives and bias.'" *United States v. Fields*, 763 F.3d 443, 464 (6th Cir. 2014) (quoting *Stevens v. Bordenkircher*, 746 F.2d 342, 346–47 (6th Cir. 1984)).

Because Mills had already extensively testified regarding the loss of custody of her older child, the district court did not abuse its judicial discretion in limiting Robert's cross-examination of Mills. Although Robert protests that this subject was related to her motive or bias, that does

not mean that he was entitled to repeatedly retread ground already thoroughly covered by prior questioning. Because the jury had ample information on this score for all of Robert's permissible purposes, the district court did not abuse its discretion in so ruling.

**IV.     Sentencing Enhancement for Neal's Perjurious Testimony**

Neal argues that the district court erred in applying a two-level enhancement to his sentence for his obstruction of justice.

A defendant who "willfully obstruct[s] or impede[s], or attempt[s] to obstruct or impede, the administration of justice" through perjurious testimony is subject to a two-level increase of his offense level. USSG § 3C1.1; *id.* cmt. n.4(B).     To apply an obstruction-of-justice enhancement based on perjury, a district court must: (1) "identify those particular portions of defendant's testimony that it considers to be perjurious," and (2) "either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002).

The district court identified a few instances of perjury in Neal's sworn testimony: (1) he admitted distributing oxycodone pills, but he claimed that the pills came from a man named "Dirk," rather than from Brent; (2) on cross-examination, he admitted that during an interview he lied to agents about buying from Brent; (3) he claimed that all of his references to "Brent" during texts, calls, and conversations during controlled buys were codenames for "Dirk"; (4) he falsely stated that he had paid his way to Texas; and (5) he untruthfully testified that the voice on recorded calls was not Brent's. Thus, the district court determined that "[o]n each occasion [Neal] committed perjury by intentionally lying to the jury in the hopes of getting acquitted, or at the very least, helping Brent Evans get acquitted." And finally, the district court noted that

"there was absolutely no evidence here that despite the fact that [Neal] did have a head injury that [Neal] w[as] testifying during trial as a result of confusion, mistake, or faulty memory."

This court reviews de novo a district court's determination that a defendant's conduct constituted obstruction of justice; however, "the district court's factual determination that [a] defendant testified falsely about material matters—and that he did so intentionally and not because of confusion, mistake, or memory lapse—is reviewed for clear error." *United States v. Camejo*, 333 F.3d 669, 675 (6th Cir. 2003).

The district court properly enhanced Neal's sentence based on his perjurious testimony. To begin with, the district court identified numerous statements by Neal that contradicted his prior comments to agents and the testimony of other witnesses. Moreover, the district court correctly noted that these remarks were material, and could have altered or affected the jury's verdict. And finally, the district court determined that the statements indicated that Neal "committed perjury by intentionally lying to the jury in the hopes of getting acquitted, or at the very least, helping Brent Evans get acquitted"—and no evidence indicated that the testimony came "as a result of confusion, mistake, or faulty memory." Neal has failed to rebut these findings and has not shown error on the district court's part—clear or otherwise. Therefore, his challenge to this sentencing enhancement must fail.

## V. Wolford, Robert, and Neal's Joint and Several Forfeiture Liability

Neal, Wolford, and Robert all challenge the district court's forfeiture order on various grounds. As with the other claims on appeal, they have failed to show error on the district court's part.

"The government may seek criminal forfeiture for violation of any federal statute 'for which the civil or criminal forfeiture of property is authorized.'" *United States v. Hampton*,

732 F.3d 687, 690 (6th Cir. 2013) (quoting 28 U.S.C. § 2461(c)). Under § 853, "any proceeds the [defendant] obtained, directly or indirectly," from the crimes, or any proceeds used to commit or facilitate the crimes, may be subject to forfeiture. 21 U.S.C. § 853(a)(1), (2).

"The government bears the burden of proving forfeiture by a preponderance of the evidence." *United States v. Evers*, 669 F.3d 645, 660 (6th Cir. 2012). However, "[t]he government is not required to prove the specific portion of proceeds for which each defendant is responsible." *United States v. Corrado*, 227 F.3d 543, 553 (6th Cir. 2000) (determining a forfeiture amount in the context of a RICO conspiracy).[6] Rather, the sentencing court must hold each conspirator jointly and severally liable for these proceeds. *United States v. Honeycutt*, 816 F.3d 362, 378–80 (6th Cir. 2016); *see also United States v. Logan*, 542 F. App'x 484, 498–99 (6th Cir. 2013). With joint and several liability, the amount of proceeds attributable to a defendant is limited to those proceeds reasonably foreseeable to that defendant. *See Logan*, 542 F. App'x at 499; *United States v. Van Nguyen*, 602 F.3d 886, 904 (8th Cir. 2010) (concluding that under § 853, a defendant "may be held jointly and severally liable for all of the foreseeable proceeds of the conspiracy").

Following the convictions, the district court held Brent and Neal each responsible for a money judgment in the amount of $309,300; Wolford for $269,700; and Robert for $110,700. Moreover, they were deemed to be jointly and severally responsible for these amounts.

"This court reviews the district court's interpretation of the federal forfeiture laws *de novo*. . . . Findings of fact are reviewed for clear error[, and] [t]he issue of whether those facts are

---

[6] Our precedent in the RICO context as to joint and several forfeiture is controlling in the § 853 context as well. *United States v. Honeycutt*, 816 F.3d 362, 380 (6th Cir. 2016). Notably, the Defendants do not rely on *United States v. Cano-Flores*, 796 F.3d 83, 91 (D.C. Cir. 2015), for a contrary view.

sufficient to constitute a proper criminal forfeiture is reviewed *de novo*." *United States v. Jones*, 502 F.3d 388, 391 (6th Cir. 2007) (citations omitted).

In determining the appropriate forfeiture amounts for Neal, Wolford, and Robert, the court properly attributed only "those proceeds of the conspiracy that were 'reasonably foreseeable' to him or her, not just those proceeds that the conspirator personally obtained." *See Logan*, 542 F. App'x at 499. These defendants not only derived proceeds from the conspiracy, but after they joined the conspiracy the proceeds were foreseeable to them since each was aware of the amount of oxycodone obtained by the conspiracy and was directly involved in distribution of the oxycodone during the life of the conspiracy.

### A.     Neal and Wolford's Benefitting from the Conspiracy

Neal participated in the conspiracy since its inception. Accordingly, the trial court held him responsible for all of the proceeds generated by the 14,325 oxycodone pills obtained by the conspirators. Neal also personally benefited, in that he both sold some pills on the side and consumed a part of his portion of the pills that he obtained for the conspiracy. Neal protests that "the government has to show that the Appellant received something from the criminal conspiracy. . . . [but] [s]ince Neal never obtained anything, a money judgment is improper." However, this assertion is belied by the record, given that Neal received pills and some personal-sale proceeds from his continuous endeavors throughout the life of the conspiracy.

Wolford, on the other hand, joined the conspiracy later than Neal, so the district court held her responsible for the proceeds generated after January 12, 2012—the date when she obtained her first oxycodone prescription. Like Neal, Wolford contends that she "received nothing in return" for the "relatively short time" she spent entangled in the conspiracy. She also

claims that the district court failed to acknowledge that she was not involved with the conspiracy after her last trip to Texas to obtain oxycodone pills.

Even after she ceased traveling to the pain clinic, however, she aided her coconspirators and continued to benefit from the proceeds of the conspiracy. Following her last trip, she allowed others to drive her minivan to Texas to obtain oxycodone pills; she distributed oxycodone pills from her and Brent's residence numerous times; and she enjoyed the benefits of the proceeds of the conspiracy—in particular the minivan Brent bought for her, and the home she shared with Brent that was purchased and renovated with both cash and oxycodone pills obtained by the conspiracy. And as the district court aptly noted, "[a]s Brent Evans' live-in girlfriend and mother of his child, she more than anyone benefitted from the fruits of the conspiracy."

Again, although both Neal and Wolford complain that the Government failed to identify the amount of proceeds that each individually, directly received, "[t]he government is not required to prove the specific portion of proceeds for which each defendant is responsible." *Corrado*, 227 F.3d at 553. Accordingly, the district court properly attributed to each one the proceeds generated by the conspiracy after they joined—proceeds that were foreseeable to them since each was aware of the amount of oxycodone obtained by the conspiracy and was directly involved in distribution of the oxycodone until the end of the conspiracy. The testimony of conspirators established that each of them was aware of the activities of the others from the time each began to travel to pain clinics. And as observed by the district court, "because all the defendants at one time helped Brent distribute or were addicts themselves, they knew the street value of the pills they turned over to Brent." Thus, the district court correctly held Neal and

Wolford responsible for the value of the oxycodone obtained by the conspiracy from the time that each began participating.

### B. Wolford and Robert's Eighth Amendment Claim

Wolford and Robert also assert that the forfeiture orders against them are not proportional to the seriousness of their offenses in violation of the Eighth Amendment's prohibition against excessive fines.

Criminal forfeiture "operate[s] as punishment for criminal conduct in violation of the federal drug . . . laws." *Corrado*, 227 F.3d at 549 (quoting *Libretti v. United States*, 516 U.S. 29, 39 (1995)). "[P]unishment for crime should be graduated and proportioned to [the] offense, . . . but the proportionality required forbids only extreme sentences that are grossly disproportionate to the crime. . . . The test is rarely met." *United States v. Young*, 766 F.3d 621,625 (6th Cir. 2014) (citations and internal quotation marks omitted); *see also United States v. Ely*, 468 F.3d 399, 403 (6th Cir. 2006).

Wolford's and Robert's sentences are not "grossly disproportionate." During their participation in the conspiracy, the conspirators obtained and distributed thousands of oxycodone pills, and the sentencing court held Wolford and Robert accountable for only the proceeds generated by the conspiracy after they joined. And as the district court pointed out, even if "Brent was the most culpable of the defendants, he could not have orchestrated the conspiracy without individuals like Wolford [and Robert] supplying him with pills." In light of their months of willful involvement in such an insidious enterprise—the gravity of which, in the district court's words, "is reflected in the devastation that the pain pill epidemic has inflicted on Kentucky residents"—this clearly is not one of the "exceedingly rare" instances in which we have found a successful Eighth Amendment challenge. *Young*, 766 F.3d at 625.

C.      **Robert's Challenge to Forfeiture Generally**

In his final claim, Robert Evans asserts that forfeiture is unconstitutional because forfeited assets may be "used to fund Department of Justice activities."  Robert failed to raise this issue before the district court, however, and he cannot show plain error.  *See United States v. Droganes*, 728 F.3d 580, 590-91 (6th Cir. 2013) ("While [the defendant's] failure [to raise his argument below] would normally constitute a waiver . . . . we may still grant relief if [the defendant] can show that the district court made a 'plain' error that 'affects [his] substantial rights.'" (quoting Fed. R. Crim. P. 52(b)).  Robert has failed to cite any binding authority to support his argument, and we have found none.  "A lack of binding precedent on the specific issue indicates that there is no plain error."  *United States v. Lantz*, 443 F. App'x 135, 139-40 (6th Cir. 2011) (citing *United States v. Amos*, 501 F.3d 524, 529 n.2 (6th Cir. 2007)).  Thus, this claim must fail.

**AFFIRMED.**