*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0324P (6th Cir.)
File Name: 04a0324p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

STEVEN G. CLARK,
  *Defendant-Appellant.*

No. 03-5431

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 02-00014—R. Allan Edgar, Chief District Judge.

Submitted: August 3, 2004

Decided and Filed: September 23, 2004

Before: CLAY and GILMAN, Circuit Judges; MATIA,
Chief District Judge.*

---

### COUNSEL

**ON BRIEF:** M. Keith Davis, AUSTIN, DAVIS &
MITCHELL, Dunlap, Tennessee, for Appellant. Perry H.

---

*  The Honorable Paul R. Matia, Chief United States District Judge for
the Northern District of Ohio, sitting by designation.

2  *United States v. Clark*  No. 03-5431

Piper, ASSISTANT UNITED STATES ATTORNEY,
Chattanooga, Tennessee, for Appellee.

---

### OPINION

---

CLAY, Circuit Judge. Defendant Steven Clark appeals his
conviction and sentence on two counts of knowingly,
intentionally and without authority distributing cocaine base
(crack), a Schedule II controlled substance, in violation of
21 U.S.C. § 841(a)(1). He argues that the district court erred
when it (1) refused to authorize the expenditure of funds for
a clinical psychologist to assist in the guilt and sentencing
phases of his trial; (2) refused to compel the government to
produce a copy of notes prepared by an FBI Agent who had
interrogated Defendant after his arrest; (3) refused to grant a
mistrial for the government's alleged failure to comply with
FEDERAL RULE OF CRIMINAL PROCEDURE 16 by failing to
produce the agent's notes in a timely manner; (4) refused to
grant a downward departure in his sentence for his purported
diminished capacity; and (5) ordered Defendant's sentence to
run consecutively to the term of his imprisonment on his state
law offenses. For the reasons that follow, we **AFFIRM**
Defendant's convictions, but **REMAND** to the district court
for consideration of whether Defendant's term of
imprisonment on his federal conviction should run
concurrently or consecutively to his state law convictions.

### I.
### Facts

On June 16, 2000, after a confidential informant ("CI") had
been searched for contraband and equipped with a recording
device, an undercover agent accompanied the CI to the
residence of Tim Knox in Shelbyville, Tennessee. Defendant
Steven Clark sold crack cocaine to the CI in exchange for
$200 in pre-recorded funds. The CI relinquished the

recording device and 0.5 grams of crack cocaine to the agents. Similarly, on October 13, 2000, after a CI had been searched for contraband and equipped with a recording device, an undercover agent accompanied the CI to McGee's Trailer Park, also in Shelbyville. The CI entered a trailer and found Defendant in the living room. Defendant sold crack cocaine to the CI in exchange for $100 in pre-recorded funds. The CI relinquished the recording device and 0.4 grams of crack cocaine to the agents. At the time of these drug transactions, Defendant was on probation for state charges of sale of cocaine under 0.5 grams, theft over $500, bail jumping, simple possession of marijuana, and driving on a revoked license. His state probation terms were subsequently revoked on various dates in 2001, and he was ordered to serve a series of prison terms expiring in August of 2010.

On March 13, 2002, the federal grand jury for the Eastern District of Tennessee returned a two-count indictment, charging that on or about October 13, 2000 and June 16, 2000, Defendant knowingly, intentionally and without authority distributed cocaine base (crack), a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). On March 18, 2002, Defendant was arrested as a result of the indictment and, after being retrieved from the Rutherford County Jail, was interviewed by FBI Special Agent Richard Poff and Agent Tim Lane of the Tennessee 17th Judicial District Drug Task Force. During that interview, Defendant purportedly admitted to selling crack cocaine in the Shelbyville, Tennessee area and also identified his drug suppliers.

On May 13, 2002, Defendant, through court-appointed counsel, moved for a psychiatric examination to determine his competency to stand trial, his ability to make a voluntary confession and whether there existed any factors that might mitigate his culpability at trial or sentencing. With the concurrence of the government, the magistrate judge referred Defendant to the U.S. Medical Center for Federal Prisoners, requesting opinions regarding whether Defendant suffered

from a mental disease or deficit that rendered him mentally incompetent to understand the judicial proceedings or assist in his defense, whether he was insane at the time of the offenses charged, whether there were any factors that shed light on the voluntariness of any statement against interest given by Defendant, and whether there were mental conditions that might mitigate Defendant's culpability related to trial or sentencing issues.

Defendant was evaluated by Dr. Richard DeMier, a clinical psychologist, over a period of months, culminating in a report generated on August 27, 2002. Dr. DeMier's report made the following findings: Defendant grew up with both parents, but his father was "very abusive." His IQ is between 77 and 88, he dropped out of school at age 15, and he has learning disabilities. He has posttraumatic stress disorder ("PTSD") as a result of being shot 17 times as an 18 year-old; symptoms include intrusive memories, flashbacks, and nightmares. He also has a history of drug and alcohol abuse. Prior to his incarceration, he regularly used crack cocaine.

In addition to the PTSD, Dr. DeMier diagnosed Defendant as having a psychotic disorder. Defendant was prescribed antipsychotic and anti-anxiety medications, to which his symptoms responded. Dr. DeMier concluded that "it is most likely that he does not have a genuine psychotic illness at this time," although he speculated that more psychotic symptoms might appear if Defendant discontinued his antipsychotic medication. Thus, Dr. DeMier diagnosed Defendant with only PTSD, which would not preclude Defendant's ability to understand the nature and potential consequences of the charges against him or hinder his capacity to assist properly in his defense.

A separate report from Dr. DeMier indicated that Defendant denied the allegations in the indictment, to wit, that he had sold crack cocaine to a confidential informant on June 16 and October 13, 2000. Although Defendant acknowledged being a cocaine user, he claimed he was not a seller. He said that

the police had used high pressure tactics during his interrogation, that he was told he should "help himself," and that he was led to believe that if he cooperated, he would receive better treatment. Defendant also told the psychologist that he had requested an attorney at least four times during his interrogation, but that they denied his request.

Dr. DeMier concluded that Defendant had no mental illness or cognitive deficit that would have hindered his ability to give a statement freely and voluntarily to the police. Dr. DeMier further found that Defendant's PTSD and his possible auditory hallucinations would not have had any impact on his ability to consider his actions and make a reasoned decision to cooperate or refuse to cooperate during the police interview. Dr. DeMier also noted that Defendant's mental health needs could be met in or out of prison and thus should have little impact on his sentence if convicted.

After the evaluation, Defendant filed a waiver of his mental competency hearing under 42 U.S.C. §§ 4241(c) and 4247(d). The court determined that Defendant was not currently suffering from a mental disease that would render him unable to understand the nature and consequences of the proceedings against him or to properly assist in his defense.

Defendant subsequently filed a motion to suppress the post-arrest statement he had given to Agent Poff and Agent Lane. Defendant argued that his purported admission to the agents that he had been buying and selling crack cocaine in the Shelbyville, Tennessee area from March, 2000 through August, 2001 had not been provided knowingly, voluntarily and intelligently because of his untreated mental illness and low intelligence. Defendant's attorney pointed out that Defendant had been incarcerated in a county jail from December 13, 2000 until the beginning of May, 2001, and, therefore, it was not possible that Defendant had sold all of the crack cocaine he allegedly had confessed to selling. According to Defendant, his admission to something he could

not have done demonstrated his mental illness and, by extension, the involuntary nature of his confession.

At the suppression hearing, Agent Poff testified that Defendant had admitted to the agents that he began selling crack cocaine to support his own cocaine habit. Defendant also allegedly told them that he was dating a woman in Shelbyville, Tennessee, and that he would travel to Shelbyville each weekend to sell crack cocaine. Poff stated, "He began dating her around February or March of 2000. And he continued to come down to Shelbyville to sell crack cocaine through August of 2001 when he was arrested on a probation violation." Poff also stated that he took contemporaneous notes of the interview, which he later summarized on a Form FD-302. The Form FD-302 stated, "CLARK advised he sold crack cocaine in Shelbyville from March 2000 through August 2001…."[1] The FD-302 made no reference to the locations of the two crack cocaine sales charged in the indictment. The court ultimately denied Defendant's motion to suppress. Later, Defendant filed a motion to compel the government to produce copies of any notes taken by law enforcement agents during their interrogation of Defendant as well as "any other rough notes made by such agents,"[2] but the court denied this motion without explanation.

---

[1]On cross-examination, Agent Poff testified that he had learned that there was a period of time from December, 2000 through May, 2001, during which Defendant had been incarcerated and, therefore, could not have been engaging in drug dealing activity.

[2]The court had issued a discovery and scheduling order on March 21, 2002. Paragraph B.1 of the order stated that "[u]pon request of the defendant, the government shall permit the defendant to inspect and copy…[t]he substance of any oral statement made by the defendant before or after his arrest in response to interrogation by a then known to be government agent which the government intends to offer in evidence at trial."

A few weeks before trial, Defendant submitted the report of psychologist Dr. David A. Solovey, who had conducted a preliminary mental evaluation of Defendant at a cost of $300. According to Dr. Solovey's report, Defendant was competent, he understood the charges against him and the possible penalties he faced, and he could properly assist in his own defense. Although finding that Defendant had PTSD and psychosis during the time he allegedly committed the charged offenses, Dr. Solovey stated that "the degrees of these disturbances were not at a level to satisfy the criteria necessary to eliminate criminal responsibility." Dr. Solovey further indicated, however, that there were "several factors that create questions regarding his statements made during his initial questioning" and that several matters "require[d] further evaluation and record review to validate," including Defendant's assertion that his interrogation continued despite his request for an attorney; the potential unreliability of many of his statements due to his mental state; and Defendant's admission to several things he could not have done. Dr. Solovey concluded that these issues could be relevant to Defendant's defense, but that he would have to spend another 12 hours (including 3 hours of court time), at a cost of $1,800, to provide a complete assessment of Defendant.

Based on Dr. Solovey's report, Defendant filed a motion requesting expert services from Dr. Solovey in excess of $1,000, which the court denied. The court noted that both Dr. DeMier (the clinical psychologist from the Bureau of Prisons) and Dr. Solovey had found Defendant competent. The court found that Defendant had not demonstrated that Dr. Solovey's services were necessary to show that his statement to law enforcement had been involuntary. Indeed, the court previously had held, in connection with his motion to suppress, that his statement had been voluntary. The court further noted that if voluntariness became an issue at trial, the jury would be able to decide the issue without an opinion from Dr. Solovey. The court found that his testimony would not assist the trier of fact in accordance with *Daubert v. Merrell Dow Pharm. Co.,* 509 U.S. 517 (1993).

Trial commenced on December 10, 2002. As to Defendant's post-arrest interview, Agent Lane testified that he had read Defendant his *Miranda* rights before Agent Poff interviewed him, and that Defendant consented to the interview without the presence of an attorney. He also signed a waiver of rights. He stated that Agent Poff then explained to Defendant that he had been indicted on two counts of distributing cocaine base on the two specific dates charged in the indictment.

Agent Poff testified that he informed Defendant that he had been indicted on federal charges as a result of controlled crack cocaine purchases at two separate locations in Shelbyville, one being the residence of Tim Knox, and the other being McGee's Trailer Park. Agent Poff added, "Mr. Clark advised us that he did sell crack cocaine from those locations." When asked on cross-examination why Defendant's admission regarding the locations of the drug sales did not appear in the FD-302 interview summary Poff had prepared, Poff stated that the information was contained in his rough interview notes upon which he had based the FD-302. He further explained that the location of the drug sales did not appear in the FD-302 because it was only a narrative summary "designed to determine how much crack cocaine he was selling and where he was getting the crack cocaine he was selling." Also, Poff did not believe Defendant's admission regarding the locations of the drug transactions was worthy of mention in the FD-302 because the CI's tape recordings confirmed that Defendant had sold crack cocaine from the two locations.

At that point, Defendant's counsel broke off his cross-examination and moved for a mistrial because Agent Poff's rough notes had not been produced before trial, even though Defendant specifically had requested them. The government offered to provide Defendant with the notes, but Defendant's counsel insisted he should have known about the notes prior to trial because the notes could have affected Defendant's decision to go to trial in the first place. The court offered to

take Defendant's guilty plea then and there and indicated that Defendant could cross-examine Agent Poff on the notes, but ultimately denied the motion for a mistrial.

When the trial resumed, Defendant's counsel cross-examined Agent Poff on the omission of the location information from the FD-302. Agent Poff again explained that the FD-302 had failed to mention Defendant's admission to selling crack cocaine from the locations of the two charged drug sales because the focus of the interview was not the specifics of those drug sales, but rather the quantity of the crack cocaine involved and the identity of Defendant's suppliers.

A jury found Defendant guilty on both counts of the indictment on December 11, 2002, and Defendant moved for a new trial shortly thereafter. As grounds, Defendant argued that his convictions were against the great weight of the evidence. Defendant also argued that the court had erred when it permitted Agent Poff to testify regarding a statement Defendant gave during his interrogation. According to Agent Poff's testimony, Defendant stated that Defendant admitted to selling crack cocaine from Tim Knox's trailer; this fact was not included in the narrative summary of the interview Agent Poff had prepared and that was provided to Defendant, but was included in Poff's rough notes upon which the summary was based. According to Defendant, he had requested Poff's rough notes during discovery and was prejudiced by the government's refusal to turn them over and the court's denial of Defendant's motion to compel their production. Defendant further argued that the court erred when it refused to grant his motion authorizing funds to retain a psychologist to determine the voluntariness of Defendant's confession; the court erred when it refused to continue the trial to permit a psychological examination of Defendant; and the court erred when it denied Defendant's motion for a mistrial after it was determined that the government had not fully responded to his discovery requests.

The court denied Defendant's motion, holding that the evidence of Defendant's guilt was overwhelming, especially in light of the testimony of the confidential informant who had purchased crack cocaine from Defendant – testimony that was corroborated by audio tapes of the transactions. In addition, Defendant confessed to selling crack, although he apparently was not asked if he had sold it on the particular occasions in question.

The court rejected any error with regard to the alleged non-disclosure of Agent Poff's notes containing Defendant's statement about the locations of the crack sales to which he had admitted. Although the court conceded that, "as a technical matter," Agent Poff's notes should have been disclosed pursuant to FED. R. CRIM. P. 16(a)(1)(A), and that the court had erred in not compelling the production of those notes, the court found that Defendant had suffered no prejudice. "[M]ost of the essentials" had been disclosed in the Form 302 and during the suppression testimony. In any event, the reference concerning the transaction taking place at Tim Knox's trailer was not exculpatory. The court held that there was no evidence that had Defendant known that Poff would testify about the precise location of either of the crack sales, the results of his trial would have been any different.

Finally, the court rejected Defendant's contention that a new trial was warranted for the court's failure to authorize additional expenditures for Dr. Solovey's services. The court noted that Dr. Solovey, like Dr. DeMier before him, had concluded that Defendant was competent to stand trial. Although Dr. Solovey did identify several factors that could have impacted the voluntariness of Defendant's statement to Agent Poff, "Dr. Solovey was never called to provide any of this information to the jury." Dr. Solovey wanted more money before he would investigate these additional factors. Quoting *United States v. Gilmore,* 282 F.2d 398, 406 (6th Cir. 2002), the court concluded that Defendant had not demonstrated that "'(1) such services are necessary to mount a plausible defense, and (2) without such authorization, the

defendant's case would be prejudiced.'"  The court further concluded that Dr. Solovey's testimony would not have assisted the trier of fact.

Defendant also moved for authorization to retain an expert, at a cost in excess of $1,000, to assist him at his sentencing hearing in order to determine the applicability of any mitigating factors.  In response, the court referred to Dr. DeMier's report, which had found that "whatever the defendant's medical status may be, any argument that it should reduce his culpability is a moral and legal question, rather than a psychological one." The court also referred to the report of Defendant's expert, Dr. Solovey, which listed numerous factors that may be relevant to mitigation.  The court found that it already had enough information regarding Defendant's mental status to make an informed decision about his sentence, further noting that mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines range.  The court therefore denied Defendant's motion.

Defendant then moved for a downward departure. Defendant argued that  U.S. SENTENCING GUIDELINES MANUAL (hereafter "GUIDELINES") § 5K2.3 authorizes a sentence below the applicable range if the Defendant committed the offense while suffering from a significantly reduced mental capacity.  Defendant cited to his low IQ, his PTSD, latent syphilis, and paranoid schizophrenia. Defendant further argued that he was entitled to a downward departure pursuant to GUIDELINES § 5K2.0 because he had an abusive father, a history of drug and alcohol abuse, a history of mental illness, and because his brother, who also had been arrested for a similar offense, was placed on a diversion program.[3]

---

[3]Although only age 25 at the time of his indictment, Defendant already had a lengthy list of prior convictions and arrests for a variety of state law offenses, including sale of cocaine, theft, bail jumping, possession of marijuana, and driving on a revoked license.

Defendant also argued that the district court should not impose a prison sentence running consecutively to his state court prison term, which will not expire until 2010. Defendant argued that his criminal history points (20) already took into account his prior state convictions.  Were it not for his criminal history, his guidelines range would have been between 21 and 27 months, instead of the 46 to 57 month range stemming from his criminal history and the fact that he had committed the offense while on probation.  Defendant argued that a consecutive sentence effectively amounted to a "double penalty" for his federal convictions.  The court pointed out that if Defendant were not sentenced consecutively, there would be no incremental increase in his prison term for the federal sentence.

The court denied the motion for downward departure, holding that Defendant did not have diminished capacity and because his prior criminal record evidenced continued disrespect for the law.  Citing GUIDELINES § 5G1.3, application note 6, the court noted that the sentence for Defendant's offense "should" be imposed to run consecutively to the term imposed for the violation of the probation.  The court sentenced Defendant at the top of the GUIDELINES range – 57 months – to run concurrently on both counts, but consecutively to his state sentence.  Defendant timely appealed.

**II.**
**Refusal to Authorize Additional Funds for Psychologist at Trial and Sentencing**

Counsel for a defendant who is financially unable to obtain expert services "necessary for adequate representation may request them in an ex parte application."   18 U.S.C.A. § 3006A(e)(1).  Such a defendant must show that the services are "necessary to mount a plausible defense" and "without such authorization, the defendant's case would be prejudiced." *United States v. Gilmore,* 282 F.3d 398, 406 (6th Cir. 2002).   We review the decision of the trial court

denying a request for expert services for abuse of discretion. *Id.* Defendant argues that the district court erred when it refused to authorize the expenditure of more than $1,000 for the services of psychologist Dr. David Solovey. For the reasons set forth below, we hold that the district court did not abuse its discretion in finding that Dr. Solovey's services were unnecessary.

Dr. Solovey's preliminary examination of Defendant (at a court-authorized cost of $300) found that Defendant was competent, that he understood the charges against him and the possible penalties he faced, and that he could properly assist in his own defense. Although finding that Defendant suffered from PTSD and psychosis during the time he committed the charged offenses, Dr. Solovey concluded that "the degrees of these disturbances were not at a level to satisfy the criteria necessary to eliminate criminal responsibility." Dr. Solovey's conclusions were virtually identical to those of Dr. DeMier, a clinical psychologist from the Bureau of Prisons, who similarly had found that Defendant's mental condition did not inhibit his ability to understand the nature and potential consequences of the charges against him or hinder his capacity to assist properly in his defense.

Dr. Solovey's preliminary report also hinted that additional evaluation of Defendant may have yielded relevant information regarding the voluntariness of Defendant's statement to FBI Agent Poff on the day of his arrest. The report referred to "several factors that create questions regarding his statements made during his initial questioning" and that several matters "require[d] further evaluation and record review to validate," including Defendant's assertion that his interrogation continued despite his request for an attorney; the potential unreliability of many of his statements due to his mental state; and Defendant's admission to several things he could not have done. But the "questions" and unvalidated matters to which Dr. Solovey hinted were little more than speculation. Because the district court already had the benefit of Dr. DeMier's conclusion that Defendant had no

mental illness or cognitive deficit that would have hindered his ability to give a statement freely and voluntarily to the police, the court reasonably concluded that Dr. Solovey's services were not necessary to establish a *plausible* defense to Defendant's post-arrest statements, but instead would have amounted to a psychological "fishing expedition." *United States v. Alden,* 767 F.2d 314, 318 (7th Cir. 1984) (affirming denial of appointment of psychiatrist at trial to support insanity defense; holding that it was appropriate for the district court to rely on initial psychiatric evaluations conducted at prison which found the defendants sane and competent to stand trial); *see also Gilmore,* 282 F.2d at 406 ("A district court need not grant a[] defendant's motion under § 3006A on the off chance that the requested services might turn up something.").

Even assuming that the district court erred, its error was harmless because of the overwhelming evidence of Defendant's guilt. *See United States v. Neuroth,* 809 F.2d 339, 342 (6th Cir. 1987) ("An error, not of constitutional dimension, is harmless unless it is more probable than not that the error materially affected the verdict.") (citations omitted). As noted, Defendant was caught on audio tape selling crack cocaine to a confidential informant on the two occasions charged in the indictment. Although a drug addict and ex-convict himself, the confidential informant confirmed Defendant's identity and the nature of the drug transactions at trial. Thus, even assuming that Defendant's statement to Agent Poff had been involuntary, we hold that it is not more probable than not that Defendant would have avoided a guilty verdict. *See United States v. Smith,* 987 F.2d 888, 892 (2d Cir. 1993) (holding that the erroneous denial of a psychiatrist's services to support duress defense was harmless error because of the "abundant" evidence of the defendant's guilt established that the availability of a psychiatric expert would not have altered either the verdict or his sentence).

For similar reasons, we hold that the district court did not abuse its discretion when it refused to authorize expenditures

for Dr. Solovey's assistance at sentencing. The court had the benefit of detailed reports from Dr. DeMier and Dr. Solovey. Dr. DeMier's report concluded that "whatever the defendant's medical status may be, any argument that it should reduce his culpability is a moral and legal question, rather than a psychological one." Dr. Solovey's report reached no medical conclusion on this point, merely referring to eighteen "factors to address the question of mitigation" that "could be considered relevant." Accordingly, we agree with the district court's conclusion that it already had enough information regarding Defendant's mental status to make an informed decision about his sentence.

### III.
### Denial of Defendant's Motion to Compel Officer's "Rough" Notes of Post-Arrest Interview

Defendant argues that the trial court abused its discretion when it refused to compel the pre-trial disclosure of the notes taken by Agent Poff during Defendant's post-arrest interview. For the reasons that follow, we disagree.

The FEDERAL RULES OF CRIMINAL PROCEDURE require the government, upon the defendant's request, to produce "the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent." FED. R. CRIM. P. 16(a)(1)(B)(ii). Agent Poff's so-called "rough notes" of Defendant's interrogation qualify as such a written record. They contain, in writing, the substance of Defendant's post-arrest oral statement made to Agent Poff after Poff had told Defendant that he had been indicted on two counts of crack cocaine distribution. Moreover, Defendant requested the production of these notes. The government did not produce them upon Defendant's request, and the district court specifically denied Defendant's motion to compel their production. Accordingly, Defendant arguably suffered a Rule 16 violation that the district court failed to remedy.

We review alleged violations of Rule 16 of the FEDERAL RULES OF CRIMINAL PROCEDURE for abuse of discretion. *United States v. Tarwater,* 308 F.3d 494, 515 (6th Cir. 2002). Assuming, *arguendo*, that a Rule 16 violation occurred, we also review said violation for harmless error. FED. R. CRIM. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). "An error, not of constitutional dimension, is harmless unless it is more probable than not that the error materially affected the verdict." *Neuroth,* 809 F.2d at 342.

The government argues that no Rule 16 violation occurred because Rule 16(a)(1)(A) of the FEDERAL RULES OF CRIMINAL PROCEDURE requires the government to disclose only the "substance" of the defendant's oral statements that the government intends to use at trial and that it disclosed the substance by producing Agent Poff's interview summary. The government, however, ignores Rule 16(a)(1)(B)(ii), which additionally requires the disclosure of "*the portion of any written record* containing the substance" of such an oral statement. This rule imposes a more specific disclosure obligation than Rule 16(a)(1)(A), and Agent Poff's notes, by definition, constitute a portion of a written record containing the substance of Defendant's interview. Accordingly, the government violated Rule 16 by failing to turn over Agent Poff's rough notes upon Defendant's request.

But, as the district court concluded, Defendant suffered no prejudice simply from the fact that the notes were produced during trial, as opposed to before trial. As noted, Agent Poff's rough notes reflected Defendant's statement that the crack sales charged in the indictment had occurred at Tim Knox's residence and at McGee's Trailer Park. Although this statement was not reflected in Agent Poff's narrative report of Defendant's interview (the FD-302), which was produced pre-trial, this statement was not exculpatory. In fact, it was inculpatory because it directly linked Defendant to the locations of the drug transactions charged in the indictment. Because it was inculpatory, the statement's nondisclosure did

not materially affect Defendant's guilty verdict. But even if it did, when the issue arose at trial, the trial court compelled the disclosure of Agent Poff's notes and permitted Defendant the opportunity to cross-examine Agent Poff on the notes. Moreover, the independent evidence of Defendant's presence at the location referenced in Agent Poff's notes was overwhelming. Defendant has not argued that the mid-trial disclosure of Agent Poff's rough notes resulted in a due process violation on the ground that he did not have adequate time to prepare his defense.

Defendant nevertheless argues that the inculpatory nature of the statement shows prejudice because he purportedly was not able to make an informed decision to enter a guilty plea (and possibly accept a sentence reduction for acceptance of responsibility rather than proceed to trial). *See United States v. Hernandez-Muniz,* 170 F.3d 1007, 1010 (10th Cir. 1999) ("Rule 16 is designed to provide the defendant with sufficient information to make an informed decision about a plea, to allow the court to rule on admissibility motions before trial, to minimize prejudicial surprise at trial, and to generally increase the efficiency of litigation.") (citing FED. R. CRIM. P. 16 advisory committee's note to the 1974 amendment). As the district court pointed out, however, the "essentials" of Defendant's inculpatory statements to Agent Poff were disclosed prior to trial in the form of the FBI Form FD-302 report, and Agent Poff had discussed Defendant's confession during a suppression hearing. There is no evidence that had Defendant known that Agent Poff's rough notes referred to the precise location of either of the crack sales, he would have pled guilty prior to trial and received a lesser sentence. To the contrary, the location of the charged crack sales was a non-issue in the case because there was uncontested audiotape evidence, authenticated at trial by a confidential informant and law enforcement witnesses, proving that Defendant had sold crack cocaine at those locations. Defendant's argument is simply too speculative to justify a new trial. *See Def's Br.* at 27 (arguing that had Defendant known of Agent Poff's notes corroborating his presence at the locations of the drug

sales, "*perhaps* he would have reevaluated his decision to forego the timely entry of a guilty plea") (emphasis added). We therefore find that the government's Rule 16 violation was harmless error.

## IV.
## Denial of Defendant's Motion for Mistrial

Rehashing his Rule 16 argument, Defendant argues that the district court should have declared a mistrial because it admitted Agent Poff's testimony concerning his rough notes, which were not produced prior to the commencement of trial, in violation of FED. R. CRIM. P. 16.[4] We review the denial of a motion for a mistrial for abuse of discretion. *United States v. Ursery,* 109 F.3d 1129, 1133 (6th Cir. 1997). A new trial is not required unless "substantial rights" are affected. *United States v. Bond,* 12 F.3d 540, 554 (6th Cir. 1993) (citing FED. R. CRIM. P. 52(a)). We hold that the district court did not abuse its discretion.

Agent Poff's summary narrative of Defendant's interrogation (the Form FD-302) did not reflect Defendant's alleged statement that he had participated in crack sales at the two specific locations charged in the indictment. Defendant argues that he was not on notice that Agent Poff might give trial testimony to this effect for two reasons: (1) the government refused to produce his rough notes (and the court's refusal to compel their pre-trial disclosure) and (2) Agent Poff did not refer to this statement at Defendant's pre-trial suppression hearing.

---

[4] Defendant has not argued that the government's nondisclosure of Agent Poff's notes amounted to a violation of *Brady v. Maryland,* 373 U.S. 83 (1963). *Cf. United States v. Aguwa,* 123 F.3d 418, 422 (6th Cir. 1997) (finding that government's failure to turn over "agents' raw notes of events in question" was not tantamount to a *Brady* violation because the notes contained no exculpatory information, and, in fact, were highly incriminating and because the content of the notes was "largely reflected in [the agents'] trial testimony, which directly implicated the defendant").

"Rule 16 does not *require* federal courts to exclude evidence not turned over to the discovering party in violation of a discovery order." *United States v. Bartle,* 835 F.2d 646, 649 (6th Cir. 1987) (emphasis in original). Rule 16 provides, "If a party fails to comply with this rule, the court *may*…prohibit that party from introducing the undisclosed evidence[] or…enter any other order that is just under the circumstances." FED. R. CRIM. P. 16(d)(2) (emphasis added). Thus, the district court did not necessarily abuse its discretion by failing to declare a mistrial due to the government's failure to turn over Agent Poff's rough notes prior to trial.

Defendant argues that a mistrial must be granted when there is evidence that the government willfully withheld the information that is the subject of the Rule 16 violation. There is dicta in some of our cases that arguably supports this viewpoint. *See United States v. Muhammad,* 948 F.2d 1449, 1454-55 (6th Cir. 1991) ("[W]e find that absent a showing of some impropriety or willfulness by the government, it was within the district court's discretion to admit" the statement the defendant allegedly had made to the testifying police officer.); *see also Bartle,* 835 F.2d at 649 (holding that the trial court was not required to exclude evidence withheld in violation of Rule 16 because there was "absolutely no evidence that the government engaged in any deceitful conduct in keeping the" information from the defendant). It is questionable, however, whether Rule 16 requires a mistrial even in cases of willful non-disclosure. The plain language of Rule 16(d)(2) is discretionary; it carves out no mandatory sanctions for willful violations. Accordingly, the general rule that "the appropriate sanction, if any, for a failure to comply with Rule 16 is left to the 'sound discretion of the trial court,'" *Muhammad,* 948 F.2d at 1454-55 (quoting *United States v. Glover,* 846 F.2d 339, 342 (6th Cir. 1988)), should apply even to willful violations. Here, the district court dealt with the Rule 16 violation appropriately by compelling disclosure of the notes and affording Defendant an opportunity for cross-examination. *See Bartle,* 835 F.2d at 650 ("Rule 16(d)(2)… provides for a variety of remedies that

optimally allow the admission of the probative evidence while insuring that the opposing party has adequate time to prepare for it.").

Even assuming that willful violations of Rule 16 mandate a mistrial, there is no evidence in this case that the government willfully violated Rule 16. Although the government failed to respond to Defendant's discovery request for Agent Poff's notes, thereby necessitating Defendant's motion to compel, the district court itself placed its imprimatur on the government's purported willful nondisclosure by denying Defendant's motion. Defendant's only other evidence of willfulness is his assertion that Agent Poff, who is a long-term FBI agent and holds a law degree, improperly excluded Defendant's statement about the locations of the drug transactions from the FD-302. The evidence at trial showed, however, that Poff did not include the location information in the narrative because the focus of the narrative was how much crack cocaine Defendant was selling and its source. Agent Poff also explained that he already knew from the tape recordings of the confidential informant that Defendant had sold crack cocaine from the two locations covered by the indictment, so there was no particular reason to reference this fact in the FD-302. This evidence shows that the government's Rule 16 violation was not willful. The denial of Defendant's motion for a mistrial is therefore affirmed.

## V.
### Failure to Grant a Downward Departure Per GUIDELINES § 5K2.13

Defendant requested, but the district court denied, a downward departure pursuant to GUIDELINES § 5K2.13, for

his purported diminished capacity.[5] Defendant argues that the district court abused its discretion by disregarding the facts that (1) Defendant was not being treated with antipsychotic medication at the time of his offenses; (2) Defendant suffers from PTSD and was being treated for paranoid schizophrenia; and (3) Defendant has a low IQ. The district court's refusal to grant a downward departure, however, is not reviewable.

A criminal defendant may appeal a sentence in four circumstances, only two of which are relevant here: (1) if the sentence was imposed in violation of law or (2) the sentence

---

[5]GUIDELINES § 5K2.13 provides:

A sentence below the applicable guideline range may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

The Application Note provides:

For purposes of this policy statement –

"Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.

was imposed as a result of an incorrect application of the sentencing guidelines. 18 U.S.C. § 3742(a). Because Defendant does not assert either of these two grounds, the only way his appeal is cognizable is if he can show that the district court believed it lacked the authority to grant a downward departure. As this Court has stated:

> Generally, a court's failure to exercise its discretion and grant a downward departure is not reviewable. *See*, *e.g.*, *United States v. Landers,* 39 F.3d 643, 649 (6th Cir.1994). An appellate court may only review a denial of a motion for a downward departure if the district court judge "incorrectly believed that [he] lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines." *Id.* (citation omitted).

*United States v. Coleman,* 188 F.3d 354, 357 (6th Cir. 1999). A court's failure to grant a downward departure is not reviewable even if based on clearly erroneous findings of fact. *See United States v. Watkins,* 179 F.3d 489, 501 (6th Cir. 1999) ("Even if the finding were clearly erroneous, the district court's failure to depart downward still would not be appealable[,] …as long as the guideline range was properly computed, the district court was not unaware of its discretion to depart from the guideline range, and the sentence was not imposed in violation of law or as a result of an incorrect application of the guidelines….") (citing 18 U.S.C. § 3742(a); *United States v. Davis,* 919 F.2d 1181, 1187 (6th Cir. 1990)).

"The Court reviews *de novo* the issue of whether the district court was aware of its authority to depart downward." *United States v. Smith*, 278 F.3d 605, 609 (6th Cir. 2002) (citing *Koon v. United States,* 518 U.S. 81, 100 (1996); *United States v. Ebolum,* 72 F.3d 35, 37 (6th Cir.1995)). The Court presumes that the district court understood its discretion to depart, "absent clear evidence in the record to the contrary." *United States v. Crouch,* 288 F.3d 907, 910 (6th Cir. 2002) (citing *United States v. Ford,* 184 F.3d 566, 585 (6th

Cir.1999)). There is no evidence in this case that the district court did not understand its discretion to depart downward. Indeed, Defendant does not argue this point, only that the court failed to exercise its discretion properly. Accordingly, we reject Defendant's appeal of the court's failure to grant a downward departure.

## VI.
### Consecutive versus Concurrent Sentences under Guidelines § 5G1.3

Defendant was convicted on both counts of knowingly, intentionally and without authority distributing cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1). At the time of his federal conviction, Defendant was serving an undischarged term of imprisonment stemming from the revocation of his probation for several violations of state law. Guidelines § 5G1.3 provides that a federal sentence "may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." Defendant argues that the district court abused its discretion when it ordered that Defendant's 57 month sentence for his violations of federal law would run consecutively to the term of his state imprisonment, set to expire in 2010. *See United States v. Covert,* 117 F.3d 940, 945 (6th Cir. 1997) (providing that the district court's decision to impose a consecutive or concurrent sentence is reviewed for abuse of discretion). We agree.

Application Note 3 of Guidelines § 5G1.3 states that under subsection (c) of that Guideline, the court "may impose a sentence concurrently, partially concurrently, or consecutively" and that "[t]o achieve a reasonable punishment and avoid unwarranted disparity," the court should consider a variety of factors, as well as the factors set forth at

18 U.S.C. § 3553(a).[6] Guidelines § 5G1.3, application note 3. Defendant argues that the district court's imposition of a consecutive sentence was erroneous because it did not consider any of these factors.

The court relied exclusively on Application Note 6 to Guideline § 5G1.3, which provides, in part:

> If the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense, and has had such probation, parole, or supervised release revoked, the sentence for the instant offense should be imposed to run consecutively to the term imposed for the violation of probation, parole, or supervised release in order to provide an incremental penalty for the violation of probation, parole, or supervised release.

Guideline § 5G1.3, application note 6. Arguably, a straightforward application of Note 6 suggests that Defendant's sentence "should" have run consecutively because he was on state probation at the time of the federal offenses, and his state probation subsequently was revoked. The court's exclusive reliance on Application Note 6 was erroneous, however, because the court failed to weigh any other factors – i.e. the factors set forth at 18 U.S.C. § 3553(a) – relevant to whether the federal sentence for an offense

---

[6] These factors include the nature of the offense and history of the defendant; the adequacy of the sentence as a deterrent and as a punishment that is just, protects the public, and rehabilitates the defendant; the sentencing range for the offense; and policy statements of the Sentencing Commission. 18 U.S.C. § 3553(a). These factors also include the type and length of the prior undischarged sentence; the time served on the undischarged sentence and the time likely to be served before release; the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and any other circumstance relevant to the determination of an appropriate sentence for the instant offense. Guidelines § 5G1.3, application note 3.

should run concurrently or consecutively to an undischarged sentence.

The federal statute that governs concurrent versus consecutive sentences clearly states that the district court must consider the § 3553(a) factors in this context. The statute provides that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." 18 U.S.C. § 3584(a). The statute then instructs that "[t]he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, *shall* consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." *Id.* § 3584(b) (emphasis added); *see also Covert*, 117 F.3d at 945 ("A district court has the discretion to impose consecutive or concurrent sentences pursuant to § 5G1.3, *upon consideration of the factors listed in 18 U.S.C. § 3553(a) and the applicable guidelines and policy statements in effect at the time of sentencing.*") (emphasis added; footnote omitted; citing *United States v. Coleman,* 15 F.3d 610, 611-12 (6th Cir.1994)).[7]

---

[7] Mandatory consideration of the § 3553(a) factors is consistent with the Background commentary that appears at the end of the Application Notes to GUIDELINE § 5G1.3. It states:

> *Background*: In a case in which a defendant is subject to an undischarged sentence of imprisonment, the court generally has the authority to impose an imprisonment sentence on the current offense to run concurrently or consecutively to the prior undischarged term. 18 U.S.C. § 3584(a). Exercise of that authority, however, *is predicated on* the court's consideration of the factors listed in 18 U.S.C. § 3553(a), including any applicable guidelines or policy statements issued by the Sentencing Commission.

GUIDELINES § 5G1.3, application note, background (emphasis added). *See Covert*, 117 F.3d at 945 n.7 ("The background to § 5G1.3(c) makes specific reference to 18 U.S.C. § 3584, which requires that the district court consider the factors outlined in 18 U.S.C. § 3553(a), when

The district court did not consider the § 3553(a) factors, at least not as reflected by the record. The transcript refers only to the court's concern that a concurrent sentence would preclude an incremental penalty for his federal offenses. Accordingly, we vacate the court's ruling that Defendant's sentence for his federal offenses are to run consecutively, so that the district court can reconsider its ruling in light of the factors set forth at 18 U.S.C. § 3553(a) and at GUIDELINES § 5G1.3, application note 3. *Cf. United States v. Becker,* No. 99-1704, 2000 WL 245508, at *1 (6th Cir. Feb. 22, 2000) (unpublished; affirming imposition of consecutive sentence; district court properly had relied on Application Note 6 *and* had considered the factors listed in § 3553(a)).

## VII.
## Conclusion

For all the foregoing reasons, the Court **AFFIRMS** Defendant's convictions, but **REMANDS** to the district court for consideration of whether Defendant's term of imprisonment on his federal conviction should run concurrently or consecutively to his state law convictions in light of the factors set forth at 18 U.S.C. § 3553(a) and GUIDELINES § 5G1.3, application note 3.

---

considering whether to impose a concurrent or consecutive sentence on a defendant who is already subject to an undischarged term of imprisonment.").