NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0124n.06

**No. 10-1456**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Feb 02, 2012**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

     **Plaintiff-Appellee,**

v.

FREDERICK ARNOLD HOGAN, D.O.,

     **Defendant-Appellant.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

_____ /

BEFORE:    MERRITT, BOGGS, and CLAY, Circuit Judges.

    **CLAY, Circuit Judge.**  Defendant Frederick Arnold Hogan, D.O., appeals the judgment in his criminal case after he pled guilty to distributing Oxycontin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Defendant argues that the district court committed numerous reversible errors relating to his conviction and sentence.

    For the reasons that follow, we **AFFIRM** the conviction and sentence imposed by the district court.

## BACKGROUND

    In 2003, the Michigan State Police Southwest Enforcement Team ("SWET") investigated Defendant Dr. Frederick Hogan's ("Dr. Hogan") Non-Invasive Pain Management Clinic ("clinic") in Lansing, Michigan for prescription drug abuse. The investigation revealed that Daniel Shepherd

and members of his family obtained and distributed a variety of prescription drugs, including Oxycontin, that were prescribed by Dr. Hogan.

From the end of 2004 through early 2006, SWET operated an undercover investigation purchasing Oxycontin from the Shepherd family and Dr. Hogan. On January 12, 2006, Al Gordon ("Gordon"), a SWET undercover officer, visited Dr. Hogan's clinic wearing a hidden recording device and video camera. Gordon recorded Dr. Hogan writing a prescription for 60 Oxycontin tablets without conducting an examination or inquiring about Gordon's medical history. The following recorded exchange took place between Dr. Hogan and Gordon:

> Dr. Hogan: Writing this prescription today is kind of against what we normally do because we like to see some evidence, but since you don't have any, if we can get us an X-ray, that would be great.
>
> Gordon: Okay.
>
> Dr. Hogan: Because even if you don't have any real trouble with your back, at least we have something on file that says he's got back pain, he's got an X-ray. Okay?
>
> Gordon: Just check the boxes? We all good with that, we can do that.
>
> Dr. Hogan: Alrighty, there you go.

(PSR ¶ 19.) Later that day, Gordon also purchased Oxycontin from Matthew Shepherd, who obtained the pills from a prescription written by Dr. Hogan. SWET's investigation found that Dr. Hogan regularly prescribed Oxycontin without reviewing a patient's medical history or conducting an examination.

On April 6, 2006, DEA and SWET executed a search warrant for the multiple residences of the Shepherd family and also Dr. Hogan's pain clinic. On August 6, the district court filed a 102-count Superseding Indictment charging Dr. Hogan for the distribution of Oxycontin in violation of

21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The Superseding Indictment alleged that Dr. Hogan regularly prescribed Oxycontin to his patients on the basis of minimal patient evaluations.

On October 12, 2009, Dr. Hogan filed a motion to dismiss the Superseding Indictment arguing that the "usual course of professional practice" standard incorporated in the underlying statute was unconstitutionally vague as applied to him. The district court denied Dr. Hogan's motion stating that Defendant "has not cited any federal case that has found the 'outside the course of professional practice' standard [] unconstitutionally vague either on its face or as applied." (R.45: Dist. Ct. Op. 5.)

On December 10, Dr. Hogan entered a guilty plea to Count 1 of the Superseding Indictment. In exchange for Dr. Hogan's guilty plea, the government agreed to dismiss Counts 2 through 102 of the Superseding Indictment and agreed that it would not prosecute Dr. Hogan further for any conduct arising out of the writing of prescriptions for controlled substances, with the exception of criminal tax violations. According to the terms of the plea agreement, Dr. Hogan stipulated that the drug quantity attributable to him pursuant to U.S.S.G. §§ 1B1.3 and 2D1.1(5) would not exceed 999 kilograms of marijuana equivalent. He also reserved the right to challenge the drug quantity calculation at sentencing.

A presentence investigation report ("PSR") was prepared and submitted to the district court. The PSR included information recovered from the SWET investigation and patient medical records obtained from the search of Dr. Hogan's clinic. In addition, the PSR included witness statements from Dr. Hogan's office manager and six patients. The government interviewed witnesses who had personal knowledge of Dr. Hogan's medical practices and also regularly purchased Oxycontin from

his clinic. These individuals included Vickie Jones a/k/a Vickie Shepherd, Kathy Shepherd, Matthew Shepherd, Tracy Shepherd, a/k/a Tracey Paglia, and Durae McQueen. The witnesses recalled several instances where Dr. Hogan prescribed Oxycontin and other pain medications after only conducting a brief patient interview that usually did not include a physical examination or a review of the patient's medical records. In addition, the witnesses observed that Dr. Hogan neglected to ask whether the patients were abusing, selling, or injecting Oxycontin despite obvious signs of drug abuse. One patient, Vickie Jones, stated that Dr. Hogan continued to prescribe Oxycontin even when she was incarcerated.

The government also interviewed Ann Tkaczyk ("Tkacyzk"), Dr. Hogan's office manager, who raised a number of concerns about the clinic's procedures for writing prescriptions. She stated that "after a period [of] time, Dr. Hogan no longer required new patients to first seek treatment from a primary care physician." (PSR ¶26.) According to Tkaczyk, even if patients arrived without medical records or medication documentation, "Dr. Hogan would see them and prescribe OxyContin or other controlled substances without any regard to the prior policy." (*Id*.) Tkacyzk also noted that the procedure for new patients changed over time to where she was no longer responsible for taking a patient's vital signs prior to an appointment with Dr. Hogan. Tkacyzk further stated that at some point it became unclear whether Dr. Hogan would perform a physical examination on any his patients. She was more concerned "when Dr. Hogan was not at the office [because] he would instruct her to collect money from patients and give them prescriptions." (*Id*. ¶ 29.) Tkaczyk stated that she reported any patient that she suspected of abusing medication or "doctor shopping" through

the online tool known as the Michigan Automated Prescription System ("MAPS"). But she believed that Dr. Hogan ignored the MAPS reports.

The government retained two experts to review the medical files. The experts concluded that the prescriptions issued by Dr. Hogan were outside the usual course of his professional practice. The experts found that Dr. Hogan's evaluations were "cursory at best and often did not include even a basic physical exam, a review of any diagnostics studies, or the production of any medical records demonstrating a need for OxyContin." (R.55: USA Sentencing Mem. 8.)

Dr. Hogan also retained an expert, John Hopper, M.D. ("Dr. Hopper") an addiction specialist, to review the medical records of patients Kathy Shepherd, Matthew Shepherd, Tracy Shepherd, and Durae McQueen. In making his evaluation, Dr. Hopper did not review the government's patient interview reports or Tkaczyk's statements. Dr. Hopper concluded that Dr. Hogan was justified in prescribing Oxycontin to his patients because "(1) each patient had a legitimate medical condition; and (2) Dr. Hogan's handling of these patients and prescriptions, though he did not strictly adhere the 'best practices' set forth in 'Responsible Opiod Prescribing' by Scott Fishman, reflects a level of competence that falls within the usual course of professional practice." (PSR ¶ 53.)

The PSR set forth a total offense level of 29 and a criminal history category I and recommended a sentence of 87 to 108 months in prison. The government raised no objections to the findings and recommendations in the PSR. Dr. Hogan's counsel submitted objections to the court, stating that the government over-estimated the number of Oxycontin tablets attributed to him. In addition, Dr. Hogan argued, that if the court granted his objection to the drug quantity, his total base offense level should be lowered to a guideline range of 57 to 71 months imprisonment.

A presentence interview was conducted on January 27, 2010, with Dr. Hogan and his attorney, Gary K. Springstead. At the interview, Dr. Hogan admitted to the conduct in Count I of the Superseding Indictment and also admitted his participation in issuing prescriptions and falsifying medical files for Vickie Jones a/k/a Vickie Shephard.

Prior to sentencing, Dr. Hogan filed a motion for downward variance and a sentencing memorandum objecting to the PSR's drug quantity determination. The government also filed a sentencing memorandum in support of the PSR's sentencing recommendation.

At the sentencing hearing, the district court heard testimony from Dr. Hogan's expert witness, Dr. Hopper, and also considered Defendant's objections to the PSR. The district judge then discussed the evidence presented before the court and also reviewed the relevant § 3553(a) factors. At the conclusion of the hearing, the district judge sentenced Dr. Hogan to 60 months of imprisonment, three years of supervised release, and also imposed a fine of $10,000 and special assessment fee of $100. Dr. Hogan timely appealed.

## DISCUSSION

### I. Dr. Hogan's Sentence

In this appeal, Dr. Hogan challenges his sentence and claims that (1) the district court failed to make a finding of fact for the drug quantity calculation; and (2) the district court abused its discretion in administering a procedurally and substantively unreasonable sentence.

#### A. Drug Quantity Calculation

We review a sentencing court's determination of drug quantity for clear error. *United States v. Olsen*, 537 F.3d 660, 663 (6th Cir. 2008). While the quantity of drugs must be supported by a

preponderance of the evidence, "the district court may rely on any competent evidence in the record; however, the district court's findings must have some 'minimum indicium of reliability beyond mere allegation.'" *United States v. Hough*, 276 F.3d 884, 891 (6th Cir. 2002) (citing *United States v. Ward*, 68 F.3d 146, 149 (6th Cir. 1995) (internal citation omitted)).

The PSR determined that Dr. Hogan prescribed 127, 200 oxycodone tablets to six patients, which approximately equaled 852 kilograms of marijuana under U.S.S.G. § 2D1.1(c)(5). The district court adopted the calculations in the PSR. Dr. Hogan argues that the government failed to sustain its burden of proof for the drug quantity determination and that the district court committed clear error in adopting the drug quantity calculation in the PSR.

The district court did not clearly err in determining the amount of drugs attributable to Dr. Hogan. The "calculation of drug quantities is an individual, fact-specific exercise that requires individual, fact-specific briefing." *Hough*, 276 F.3d at 891. Here, the district court considered a variety of evidence in making its determination, including the testimony of Dr. Hopper at sentencing, the PSR, and the sentencing memoranda prepared by the parties. At sentencing, the district court thoroughly explained its process of review. The district court reviewed the government's interview report of Tkacyzk, which questioned Dr. Hogan's judgment in writing prescriptions for his patients. In addition, the district court reviewed the medical records of the six patients, which corroborated the interview reports provided in the PSR. This information proved that the treatment prescribed to each patient did not reflect the general medical professional standards as basic physical exams were not routinely performed and Dr. Hogan issued prescriptions only on minimal information given by the patient. The information also showed that Dr. Hogan failed to reevaluate his patients or

update their treatment plans and often ignored signs of prescription-drug abuse that were indicated in the MAPS reports.

We further note that the district court properly followed all of the sentencing procedures by affording the parties an opportunity to comment on the PSR. The court heard testimony from Defendant's expert witness, Dr. Hopper, who testified that Dr. Hogan's conduct was within the normal and customary professional practice of medical doctors. The government made the witnesses who provided testimony in the PSR available for examination by the defense; however, Defendant elected not to confront those witnesses at the hearing. At the conclusion of the hearing, Defendant simply preserved an objection to the drug quantity based in part on the right to confront his accusers.

Based on a review of the sentencing hearing transcript, we hold that the district court thoroughly reviewed the evidence in the record to support the drug quantity calculation. "A district court's approximation of drug quantity is not clearly erroneous if it is supported by competent evidence in the record." *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). We hold that the drug quantity calculation indicated in the PSR was not only below the amount stated in his plea agreement but also appropriate given the severity of his offense. The overwhelming evidence presented by the government showed that Dr. Hogan frequently prescribed Oxycontin to patients using forms that were pre-written or only filled out by the nurse. In addition, Dr. Hogan falsified documents and medical records to conceal the fraudulent prescriptions. We agree with the district court's conclusion that Dr. Hogan failed to meet the usual professional practice of medical doctors in writing his prescriptions. Therefore, the drug quantity calculation attributable to Dr. Hogan was proper.

**B.      Procedural and Substantive Reasonableness of Dr. Hogan's Sentence**

We review challenges to the district court's sentencing determinations for reasonableness under an abuse of discretion standard. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). When reviewing a sentence for abuse of discretion, we must determine whether the sentence is procedurally and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 41 (2007).

**1.      Procedural Reasonableness**

In reviewing for procedural reasonableness, "a district court necessarily abuses its sentencing discretion if it 'commit[s] [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *Bolds*, 511 F.3d at 579 (citing *Gall*, 552 U.S. at 51). A sentence is procedurally reasonable if the record contains "the district court's rationale for concluding that the sentence imposed is sufficient but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *Id*. at 580.

We hold that the district court properly determined Dr. Hogan's sentence. At sentencing, the district court acknowledged its duty "to impose a sufficient sentence, but one that is not greater than necessary to comply with the federal sentencing statute, 18 United States Code § 3553(a) factors." (R.67: Sentencing Hr'g Tr. 64.) The court deliberated on how to fashion the appropriate sentence that balanced Dr. Hogan's generally good character with his past criminal convictions. At sentencing, the district court stated:

> There appears to be two individuals. There's one individual who does not live a lavish lifestyle, apparently, who has lots of friends. . . is much loved and respected by lots of people and who holds himself out not only as professional and well-educated, but as being moral and thoroughly honest.
>
> And then I peel back the history a little bit and I see here that as early as 1997 in Detroit a misdemeanor marijuana conviction of possession. And then I move up to an incident in 1999 giving rise to a conviction in June of '01, the government has just made allusion to it.
>
> . . . And we're back here in another district court nine years later. That's really a concern to the court. I don't know quite what to do with that. Your history and characteristics would seem to indicate that you worked hard to get where you are. . . But I'm bothered by what I see here on these past convictions and what I read here in this case.

(*Id*. 64–65.)

Based on the record, we find that the district court carefully reviewed the arguments presented in Defendant's sentencing memorandum and rejected or accepted those arguments as it deemed appropriate. The court granted Dr. Hogan's motion for a downward variance, recognizing that the PSR's recommended sentence would not be appropriate given the personal characteristics of the Defendant. The court favorably acknowledged Dr. Hogan's effort to serve families with medical needs that are generally underserved by the medical profession. But as the court also observed, "doctor shopping" was prevalent, particularly in this community "where patients commonly lie" and that this is a "challenge in the medical arena." (*Id*. 49.) In view of the foregoing, we do not find any evidence that the district court abused its discretion. That the court did not weigh the factors raised by Defendant in the manner that he would have liked to have had them weighed does not indicate that the court acted improperly or disregarded Defendant's arguments.

Dr. Hogan argues that the district court abused its discretion by applying the Sentencing Guidelines as if they were mandatory. We disagree. We review Dr. Hogan's objection to the sentencing guidelines for plain error, since it was not raised below. *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc). Although the district court did not expressly describe the Guidelines as advisory, there is no indication from the record that the district court failed to treat them as such. The district court is "not bound to apply the Guidelines, [but] must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). The district court justified Dr. Hogan's sentence by explaining its reasoning for imposing the sentence after weighing a number of considerations, including the seriousness of the offense and its particularly strong effect on the community. (R.67: Sentencing Hr'g Tr. 66.) Despite these observations, the court granted Dr. Hogan's motion for a downward variance for his conviction, which suggests that the court recognized that a less severe sentence was warranted.

### 2.    Substantive Reasonableness

Dr. Hogan also challenges the substantive reasonableness of his sentence. He claims that the district court was overly influenced by the fact that some of his patients were convicted of distributing prescription drugs and that he was previously convicted of a federal offense related to his medical practice.

A sentence is substantively reasonable if it is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (internal citation and quotation marks omitted). A sentence is "substantively unreasonable where the district

court 'selects the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor.'" *United States v. Moon*, 513 F.3d 527, 543 (6th Cir. 2008) (citing *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006)).

There is sufficient evidence in the record to conclude that the district court imposed a substantively reasonable sentence. The district court appropriately considered Dr. Hogan's prior federal conviction for the falsification of medical records as well as his patient's medical history of substance abuse, while balancing Defendant's personal history and characteristics. The district court also considered the § 3553(a) factors that led it to believe that the sentence it imposed was appropriate. Based on the totality of the evidence in the record, we hold that the district court "did not select [Dr. Hogan's] sentence arbitrarily, base it on impermissible factors, or give unreasonable weight to any pertinent § 3553(a) factor in deriving it." *United States v. Warman*, 578 F.3d 320, 351 (6th Cir. 2009). Therefore, Defendant's sentence is substantively reasonable.

## II.     Failure to Grant a Downward Departure

Dr. Hogan also requested a downward departure in the length of his sentence because he claimed that the Sentencing Guidelines for his drug offense was too severe.

We review *de novo* the issue of whether the district court was aware of its authority to depart downward. *United States v. Clark*, 385 F.3d 609, 623 (6th Cir. 2004). "The Court presumes that the district court understood its discretion to depart, 'absent clear evidence in the record to the contrary.'" *Id.* (citing *United States v. Crouch*, 288 F.3d 907, 910 (6th Cir. 2002)). However, "[w]here a defendant raises a particular argument in seeking a lower sentence, the record must reflect

both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Recla*, 560 F.3d 539, 547 (6th Cir. 2000) (citing *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006)). A district judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

The district court adequately explained its reasoning and properly exercised its discretion in addressing Dr. Hogan's motion for downward variance by reducing his sentence from the recommended 87–107 months of imprisonment to 60 months. At sentencing, the district court stated that it was going to give some kind a downward of variance to the sentence because the PSR's recommendation for a higher sentence was too severe. The district court said:

> This oxycodone statute is aimed at traffickers, there's no question about it. . . And that wasn't your purpose. . . So it seems to this Court that a sentence has to be ameliorated to an extent for that. This is a very serious offense. It's one in which the community is very concerned.

(R. 67: Sentencing Hr'g Tr. 66.)

This particular statement clearly demonstrates that the district court understood its discretion to depart downward. Therefore, we reject Defendant's claim that the court failed to consider its motion for a downward departure. We further note that Dr. Hogan's sentence of 60 months falls within the range he requested of 57 to 71 months imprisonment. The sentencing transcript clearly shows that the district court was not only aware of its authority to grant a downward departure, but in fact exercised that authority by holding that the PSR recommended a harsher punishment than was necessary for his offense.

**CONCLUSION**

For the reasons discussed above, we **AFFIRM** the conviction and sentence imposed by the district court.